T.C. Memo. 2014-200

UNITED STATES TAX COURT

BRIAN R. CUNNINGHAM, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15427-13L.                    Filed October 1, 2014.

        P failed to file Federal income tax returns for at least eight
years.  For three of those years (2005-07) R mailed notices of
deficiency to P, assessed the deficiencies determined thereon, issued
notice and demand for payment of the liabilities, and, when P did not
pay, issued to P a notice of intent to levy and a notice of the filing of a
notice of Federal tax lien ("NFTL").  P timely requested a collection
due process ("CDP") hearing under I.R.C. sec. 6330(d) and stated that
he wanted a collection alternative--i.e., an offer-in-compromise
("OIC"), an installment agreement ("IA"), or currently not collectible
("CNC") status--and wanted the lien filing withdrawn.  At the CDP
hearing before the Office of Appeals ("Appeals"), P submitted a
financial statement (on Form 433-A, "Collection Information
Statement for Wage Earners and Self-Employed Individuals") but,
despite Appeals' request, did not submit his delinquent tax returns
nor documentation to corroborate his Form 433-A.  P did not describe
or substantiate any harm that he expected the NFTL filing to cause
him.  Appeals issued a notice of determination sustaining the

**[\*2]** proposed levy and the filing of the NFTL.  P filed a petition in this Court, and R moved for summary judgment.

Held:  In view of P's failure to file his delinquent tax returns, to provide information to corroborate his financial condition alleged on Form 433-A, or to describe or substantiate any harm expected to result from the NFTL filing, Appeals did not abuse its discretion in denying CNC status, or in not accepting any other collection alternative, or in sustaining the filing of the NFTL and sustaining the proposed levy.

Brian R. Cunningham, for himself.

Olivia Hyatt Rembach, for respondent.


MEMORANDUM OPINION


GUSTAFSON, Judge:  In this "collection due process" ("CDP") case brought under section 6330(d),[1] we review the determination by the Office of Appeals ("Appeals") of the Internal Revenue Service ("IRS") to sustain a proposed levy and the filing of a notice of Federal tax lien ("NFTL"), in order to collect the 2005, 2006, and 2007 income tax of petitioner, Brian R. Cunningham. Respondent, the Commissioner of Internal Revenue, filed a motion for summary

---

[1]All section references are to the Internal Revenue Code ("the Code") in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** judgment pursuant to Rule 121 asserting that trial is unnecessary and that we can resolve this case on the undisputed facts. Mr. Cunningham filed a response to the motion for summary judgment. For the reasons stated below, we will grant the motion.

## Background

### Non-compliance

The IRS's records do not show any Federal income tax returns filed by Mr. Cunningham for the years 2004 through 2012. Mr. Cunningham alleges he filed a return for 2004, and for purposes of summary judgment we assume he has.[2] Mr. Cunningham acknowledges that he filed no Federal income tax returns for the years at issue (2005, 2006, and 2007) or the later years.

### Collection attempts

The IRS issued to Mr. Cunningham notices of deficiency for the years 2005 (in November 2009), 2006 (in February 2009), and 2007 (in September 2011), and assessed the respective deficiencies in April 2010, June 2009, and January 2012. The IRS gave Mr. Cunningham notice and demand for the liabilities on several

---

[2]Mr. Cunningham did not produce to Appeals (or this Court) a copy of a 2004 return, so even for purposes of summary judgment, we might arguably hold that Appeals could reasonably rely on its records and conclude that he had not filed for 2004. But since the 2004 filing does not affect the outcome, we can assume in Mr. Cunningham's favor.

[*4] occasions and then sent him in September 2012 a notice of proposed levy and in October 2012 a notice of the filing of a Federal tax lien, each of which advised Mr. Cunningham of his right to request a CDP hearing.

CDP hearing request

In October 2012 Mr. Cunningham timely requested a hearing on Form 12153, "Request for a Collection Due Process or Equivalent Hearing". On the form he checked boxes indicating that he was interested in an installment agreement ("IA") and an offer-in-compromise ("OIC"). He also checked boxes to indicate that he wanted the lien subordinated, discharged, or withdrawn.

Mr. Cunningham attached to his form a three-page "Attachment Letter to CDPH Request Form (#12153)" that listed 18 issues or contentions.[3] The attachment requested (among other things) that Mr. Cunningham be placed in "currently not collectible" ("CNC") status. Mr. Cunningham's list of issues included "I request reduction of the penalty under §6702(d)", though no such penalty had been assessed against him. His list also included the assertion that for "all seizures occurring after July 22, 1998, the Revenue Officer must document in

---

[3]Mr. Cunningham's attachment consisted of selected and edited boilerplate from a form that this Court sees from time to time. See, e.g., Sullivan v. Commissioner, T.C. Memo. 2012-337, at *4-*7 & n.2 (citing Thornberry v. Commissioner, 136 T.C. 356, 369 (2011)).

**[*5]** the case history that the accuracy of the tax liability has been verified",

though the IRS had made no such seizures.

Mr. Cunningham's attachment requested that the IRS provide to him

numerous documents.[4] The attachment also stated: "I agree to provide the

requested financial information"; "I will furnish you with your completed forms";

"I have additional information to submit"; "if the appeals officer * * * needs more

information or has any questions, he can contact me in writing. I can explain in

more detail my exact position if I am informed where this additional information is

needed." However, apart from the Form 433-A, "Collection Information

Statement for Wage Earners and Self-Employed Individuals", discussed below, he

never provided any additional documentation.

---

[4]Mr. Cunningham's attachment requested "copies of the Notice and Demand letter (90 day letter), Form 17-A, Summary Record of Assessment, Form 23-C or replacement form, RACS Report and form 4340, 'Certificate of Assessment and Payments', etc. Pursuant to 26 CFR Part 301.6203-1, * * * the record of assessment with the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period and the amount assessed * * * a copy of my entire administrative file including the Case Activity Record * * * proof of accuracy of the tax liability and the documentation of the research of said proof * * * documentation of the case history that the accuracy of the tax liability has been verified."

**[*6]** <u>Agency-level CDP hearing</u>

On February 15, 2013, the Appeals officer sent Mr. Cunningham a letter

setting the CDP hearing for April 23, 2013 (more than two months in the future),

and stating:

> For me to consider alternative collection methods such as an installment agreement or offer in compromise, you must provide any items listed below. In addition, you must have filed all federal tax returns required to be filed. Our records show you have not filed an income tax return since tax year 2003.
>
> Please provide the following documents:
>
> - A completed Collection Information Statement (Form 433-A for Individuals and/or Form 433-B for businesses.) You can find it on line at irs.gov
>
> - Signed tax return(s) for the following tax periods. Our records indicate they have not been filed:
>   Type of Tax: <u>Income, Form 1040</u>
>   Period or Periods: <u>2004,</u> <u>2008, 2009, 2010, 2011 and 2012</u>
>
> - Bank Statements for the first 3 months of 2013
>
> - Copy of your paystub, showing your wages, and all deductions to your pay, for the first three months of 2013
>
> Please send me the items requested above no later than 04/18/2013 [i.e., 5 days before the hearing]. I cannot consider collection alternatives at your conference without this information.

The version of Form 433-A that Mr. Cunningham completed (i.e.,

Form 433-A(OIC)) stated below the signature line:

**[*7]** Remember to include all applicable attachments listed below.

> Copies of the most recent pay stub, earnings statement, etc., from each employer
>
> Copies of bank statements for the three most recent months
>
> Copies of the most recent statement, etc., from all other sources of income such as pensions, Social Security, rental income, interest and dividends, court order for child support, alimony, and rent subsidies
>
> Copies of the most recent statement for each investment and retirement account
>
> Copies of the most recent statement from lender(s) on loans such as mortgages, second mortgages, vehicles, etc., showing monthly payments, loan payoffs, and balances * * *

Mr. Cunningham requested a delay in the date of the hearing. By letter of March 19, 2013, Appeals extended the date of the hearing by 14 days from April 23 to May 7, 2013. The letter also explicitly required the submission of documents four days earlier, on May 3, 2013:

> The deadline to provide the requested information is:
>
> **<u>05/03/2013</u>**
>
> Please refer back to my letter dated 02/15/2013 for a list of this needed information.
>
> On May 3, 2013, Mr. Cunningham faxed to Appeals a Form 433-A, but <u>not</u>

the "applicable attachments" called for by the form, nor the tax returns, bank

**[*8]** statements, or paystub requested in Appeals' letter. He attended the hearing on May 7, 2013. The parties dispute the details of what was said and done at that hearing, but there is no dispute that Mr. Cunningham did not present the requested documentation at that hearing, nor at any time thereafter.

On May 29, 2013, Appeals issued its notice of determination, sustaining the lien and levy notices.

Tax Court proceedings

Mr. Cunningham timely filed his petition in this Court in July 2013. The Commissioner filed a motion for summary judgment on July 8, 2014. The Court's order of July 16, 2014, required Mr. Cunningham to file a response and explained to him the nature of a motion for summary judgment and the manner in which he should respond:

> If Mr. Cunningham disagrees with the facts set out in the IRS's motion, then his response should point out the specific facts in dispute. If he disagrees with the IRS's argument as to the law, then his response should also set out his position on the disputed legal issues. Q&As that the Court has prepared on the subject "What is a motion for summary judgment? How should I respond to one?" are available at ustaxcourt.gov/taxpayer_info_start.htm#START40 and are printed on the page attached to this order.

Mr. Cunningham timely filed a response. The Court then held a telephone conference with the parties on August 25, 2014. Respondent's counsel stated that

**[\*9]** many factual assertions in Mr. Cunningham's response are not correct but that, for purposes of summary judgment, the Court may assume the facts he states in his response.

## Discussion

I.    Applicable legal principles

A.    Summary judgment standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial.  Summary judgment may be granted where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(a) and (b).  The party moving for summary judgment (i.e., the Commissioner) bears the burden of showing that there is no genuine dispute as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment (i.e., Mr. Cunningham).  See Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).

B.    Collection review procedure

If a taxpayer fails to pay any Federal income tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property; and section 6323(f) authorizes the IRS to file an NFTL to

**[*10]** protect the Government's interests. However, Congress has added to chapter 64 of the Code certain provisions (in subchapter C, part I, and in subchapter D, part I) entitled "Due Process for Liens" and "Due Process for Collections", and those provisions must be complied with before the IRS can proceed with a levy or sustain the filing of an NFTL: The IRS must first issue a final notice of intent to levy and/or a notice of filing an NFTL and notify the taxpayer of the right to an administrative hearing. Secs. 6320(a) and (b), 6330(a) and (b)(1). After receiving such a notice, the taxpayer may request that administrative hearing, secs. 6320(a)(3)(B), (b)(1), 6330(a)(3)(B), (b)(1), which takes place before Appeals, sec. 6330(b)(1). If the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court, secs. 6320(c), 6330(d)(1), as Mr. Cunningham has done.

At the CDP hearing, the Appeals officer must determine whether the proposed collection action may proceed. In the case of a notice of intent to levy, the procedures for the agency-level CDP hearing before Appeals are set forth in section 6330(c). The procedures for the agency-level hearing regarding an NFTL are the same as those set forth in section 6330(c) for a notice of levy. Sec. 6320(c). The Appeals officer is required to take into consideration several things:

**[*11]** First, the Appeals officer must verify that the requirements of any applicable law and administrative procedure have been met by IRS personnel. Sec. 6330(c)(3)(A). The attachment to the notice of determination summarized the Appeals officer's compliance with these requirements, and we discuss below Mr. Cunningham's contentions as to verification under section 6330(c)(1).

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the * * * [collection action], including" challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Some of Mr. Cunningham's contentions pertain to collection alternatives (i.e., an OIC, an IA, and CNC status), which we will discuss below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). Mr. Cunningham now concedes he was not entitled to contest his underlying tax liability in the CDP hearing.[5]

---

[5]In his petition, Mr. Cunningham alleged that he "questioned the liability during the [agency-level] CDP hearing and was not satisfied that he had received the Notice of Deficiencies [sic]." However, after the Commissioner's motion for summary judgment demonstrated the IRS's issuance and mailing of statutory notices of deficiency, Mr. Cunningham stated in his response: "Respondent has since produced mailing lists showing the mailing of said Notice of Deficiencies

(continued...)

[*12] Finally, the Appeals officer must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). In this regard, the notice of determination issued to Mr. Cunningham stated:

> The taxpayer did not provide the requested financial information and supporting documentation to support his request for an uncollectible status. Additionally, the taxpayer is not in compliance with his filing requirements. Therefore, no collection alternatives could be granted at this time. It is Appeals' determination that the levy action and the filed lien balances the need for efficient collection of taxes with the legitimate concern the actions are no more intrusive than necessary.

When, as here, the underlying liability of the taxpayer is not properly at issue, the Tax Court reviews Appeals' determination regarding the appropriateness of the collection action for abuse of discretion.[6] Goza v. Commissioner, 114 T.C.

---

[5](...continued)
and Petitioner concedes the discussion of the liability for tax years 2005-2007".

[6]The OIC is authorized by section 7122(a). "'The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general.'" Gregg v. Commissioner, T.C. Memo. 2009-19, slip op. at 12 (quoting Kindred v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006)). Consequently, in reviewing Appeals' determination not to accept an OIC, we do not substitute our judgment for that of Appeals and decide whether in our opinion an OIC should have been accepted here. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009). Instead, we review

(continued...)

**[*13]** 176, 182 (2000).  That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

## II.  Analysis

Mr. Cunningham has asserted errors by Appeals as to "verification * * * that the requirements of any applicable law or administrative procedure have been met", under section 6330(c)(1), and as to several collection-related issues under section 6330(c)(2)(A) and (3)(C).

### A.  Verification

Section 6330(c)(1) provides:  "The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."  Mr. Cunningham invokes this provision and disputes "verification", but his broad contention misses the mark. He attempts to invoke this "verification" concept to criticize Appeals' alleged failure to verify adequately a wide variety of facts related to his entitlement to collection alternatives and CNC status (in particular, the facts he alleges about his financial hardship), but the "verification" called for by this statute is more narrow.

---

[6](...continued)
Appeals' determination for abuse of discretion.

[*14] Apart from any collection alternative or issue that the taxpayer might raise,

see Hoyle v. Commissioner, 131 T.C. 197 (2008), Appeals must verify that, before

the CDP hearing, all legal and administrative requirements--i.e., the predicates for

the collection notice that prompts the CDP hearing request--have been met.  Thus,

> [T]he basic requirements, see sec. 6331(a), (d), for which the Appeals officer obtains verification are:  [1] the issuance of a notice of deficiency, see sec. 6212(a); [2] the IRS's timely assessment of the liability, secs. 6201(a)(1), 6501(a); [3] the giving to the taxpayer of notice and demand for payment of the liability, sec. 6303; and [4] the giving to the taxpayer of notice of * * * [the proposed collection action] and of the taxpayer's right to a hearing, secs. 6330(a), 6331(d).  [Carothers v. Commissioner, T.C. Memo. 2013-165, at *12 n.8.]

As is discussed above, Mr. Cunningham concedes the first requirement (issuance

of the notice of deficiency).  The Commissioner's memorandum shows (and cites

evidence for) compliance with the other three, and Mr. Cunningham does not

dispute them.

Consequently, the Commissioner is entitled to summary judgment on the

issue of verification under section 6330(c)(1).

B.     Collection issues

Mr. Cunningham alleges that the IRS abused its discretion with respect to

various conclusions it reached in determining his financial circumstances and his

[*15] reasonable collection potential, denying him collection alternatives and CNC status, and issuing a notice of determination without giving him sufficient time.

### 1. Denial of collection alternatives

Mr. Cunningham indicated an interest in an OIC and an IA, but Appeals did not enter into such an agreement with him. For two independent reasons, we sustain Appeals' action:

### a. Mr. Cunningham was not in compliance.

The IRS has a policy of not entering into an OIC or an IA with a taxpayer who is not up to date in filing required tax returns. This policy is not an abuse of discretion, see Wright v. Commissioner, T.C. Memo. 2012-24; Huntress v. Commissioner, T.C. Memo. 2009-161; and applying this policy in Mr. Cunningham's instance was certainly not an abuse of discretion. He had failed to file income tax returns for at least eight years. This is a remarkable failure.

Mr. Cunningham makes two principal counter-arguments in this regard. First, he contends he should be excused for his non-compliance because he "was unable to prepare any tax returns because his accountant died and Petitioner was unable to retrieve records". Mr. Cunningham alleges that the dead accountant's

[*16] family failed or refused to return his records, so Mr. Cunningham must reconstruct his records by getting information from third parties. He does not corroborate this assertion even to the extent of stating when the accountant died, or explaining how the accountant had eight years' worth of Mr. Cunningham's records but had not prepared any returns.

But even if his accountant <u>did</u> die as alleged, and no matter when he died,[7] and even if the accountant's family thereafter refused Mr. Cunningham's requests, this excuse falls flat. It was Mr. Cunningham's duty to file returns, and it is no one's fault but his own that he allowed himself to become so far in arrears that preparing those returns now requires extraordinary and difficult effort. It is now incumbent on him to exert that effort, and Appeals gave him 2½ additional months to do so. His prior extreme failure over a period of at least eight years--and the

---

[7]In a separate case--<u>Cunningham v. Commissioner</u>, T.C. Dkt. No. 27379-13 (filed Nov. 20, 2013)--Mr. Cunningham testified on September 9, 2014, that the accountant died in 2011. If in the instant case we were to take judicial notice of that testimony and assume it true, it would not improve Mr. Cunningham's position in this case. Mr. Cunningham's failure to file returns for 2005, 2006, and 2007--the latest of which was due in April 2008--is not explained by that death in 2011; and when the CDP hearing concluded in May 2013 without the filing of any of the returns, Appeals did not abuse its discretion by concluding that Mr. Cunningham's noncompliance was unexcused and would not be cured by the allowance of a few more days or weeks.

[*17] unfortunate but almost predictable consequences of that long-term delinquency--do not now make him entitled to additional special indulgence by the tax collector.

Second, Mr. Cunningham argues that his preparation of his delinquent returns was delayed by the IRS's supposed failure to provide documents he needed in order to prepare those returns. He complains: "The only documents received from Appeals were copies of Petitioner's transcripts for tax years 05-12. No transcripts of account or wage transcripts were provided for tax years 2003 or 2004 and no transcripts for Petitioner's wife were received." Since filing joint returns is elective, not mandatory, see sec. 6013(a), and since Mr. Cunningham could have filed as a married person filing separately, sec. 1(d), there is no apparent reason why he needed his wife's transcripts in order to bring himself into compliance. Moreover, he does not explain why he did not prepare returns for at least eight of the nine years--i.e., 2005 through 2012--for which he admits the IRS did provide his transcripts. A taxpayer cannot stop filing returns for eight years and then blame the IRS for not promptly remedying his defaults.

Mr. Cunningham's request for a CDP hearing--laden with demands for documents--seems to show that he conceived of the hearing principally as an occasion in which the IRS becomes obliged to give information to the taxpayer.

[*18] This is a serious misunderstanding.  A CDP hearing is principally the taxpayer's opportunity to provide information <u>about himself</u> to the IRS, in order to induce the agency to forgo or temper its collection activity.  A taxpayer who requests a CDP hearing but then declines to provide information about himself is behaving self-contradictorily.  The boilerplate that Mr. Cunningham attached to his CDP request reflects, at best, a distortion of the actual purpose of the CDP hearing and, at worst, a cynical attempt to use the procedure simply to attempt to burden the IRS with pointless chores and to delay the collection of tax.

        b.      <u>Mr. Cunningham failed to provide requested financial documentation</u>.

Appeals requested documentation of Mr. Cunningham's financial situation--both on the Form 433-A and in Appeals' letter--which documentation Appeals intended to use to evaluate his financial situation and his entitlement to a collection alternative, but Mr. Cunningham failed to provide any of this documentation.  Appeals does not abuse its discretion when it rejects a collection alternative because a taxpayer does not provide all of the necessary financial information during the CDP hearing process.  <u>See, e.g.</u>, <u>Olsen v. United States</u>, 414 F.3d 144, 151-154 (1st Cir. 2005); <u>McLaine v. Commissioner</u>, 138 T.C. 228, 243 (2012); <u>Sullivan v. Commissioner</u>, at *20.  Mr. Cunningham rejoins:

**[\*19]** Appeals did not request Petitioners' documentation substantiating the figures on the 433 after the initial letter issued on February 15, 2013. She [the Appeals officer] emphasized the filing requirements and Petitioner agreed to file whatever tax returns were necessary. No indication was given to taxpayer that more financial documentation was needed. Petitioner was unaware Appeals was waiting for more documentation and no deadline was given to provide documentation. Petitioner would have provided proof of all figures on Form 433 if he had been further requested to do so.

It is hard to tell what this contention means, since Appeals <u>did</u> request the information again after the initial letter--i.e., in the letter of March 19, 2013, granting the requested extension, which stated: "Please refer back to my letter dated 02/15/2013 for a list of this needed information"--and did set a deadline for providing the information (i.e., May 3, 2013).

But even without that repetition in the March 19 letter, Mr. Cunningham was not entitled to disregard Appeals' reasonable request in its initial letter and to take that request seriously only if Appeals repeated it in some fashion. Rather, it was incumbent on Mr. Cunningham to provide, upon Appeals' first request, the information that would have shown his financial circumstances; and his failure to do so justified Appeals' declining a collection alternative.

2.  Denial of CNC status

In view of Mr. Cunningham's non-compliance and resulting ineligibility for other collection alternatives, Appeals considered Mr. Cunningham's possible

**[\*20]** eligibility for CNC status, but Appeals then denied that status.

Mr. Cunningham argues that in so doing Appeals failed to consider properly his financial circumstances and therefore failed to compute properly his inability to pay. However, since Mr. Cunningham failed to substantiate that financial information, Appeals was not obliged to believe it and was not obliged to attempt to compute his ability to pay. It is not an abuse of discretion to deny CNC status to a delinquent taxpayer who fails to prove his financial situation. See Sullivan v. Commissioner, at \*20. For that reason, we need not resolve the parties' disputes about the details of his financial circumstance; Mr. Cunningham did not provide during his CDP hearing (or thereafter) the predicate for such a dispute.

### 3.  Denial of request for more time

Mr. Cunningham argues that Appeals unreasonably failed to grant him more time to get into compliance and provide financial information. It is not clear from the record that he actually requested more time, but for present purposes we assume that he did request it at the CDP hearing on May 7, 2013, and that Appeals explicitly denied the request. Such a denial would have been reasonable and not an abuse of discretion.

Appeals' letter of February 15, 2013, had informed Mr. Cunningham of his need to file his delinquent returns. (Of course, Mr. Cunningham had filed returns

**[\*21]** for years before 2004, and he does not pretend that he first learned of this duty in February 2013.)  The letter also informed him of his need to provide financial information about himself.  Appeals gave him until May 3, 2013 (i.e., 2½ months, including a two-week extension), to prepare the returns and provide the information.  He prepared none of the returns, not even the 2012 return that had been recently due on April 15, 2013, and provided none of the information.  By May 2013 Mr. Cunningham had given Appeals no reason to suppose that he was diligently working to satisfy Appeals' requests or that he was a deserving recipient of latitude.

Moreover, since Appeals issued its notice of determination well over a year ago, it appears Mr. Cunningham still has filed none of the returns.  If Appeals reckoned that Mr. Cunningham could not be counted on to use additional time to bring himself into compliance, Appeals evidently reckoned well.

Mr. Cunningham argues:

> Petitioner is an average citizen attempting to do his best to comply with everything that everybody wants all at once and is really quite annoyed that respondent keeps repeating "petitioner is not in compliance" or saying "petitioner is not working with respondent in either case."

Mr. Cunningham's expression of annoyance is not appropriate.  The "average citizen" is not years behind in his tax compliance.  The only reason that the IRS

[*22] wanted eight tax returns "all at once" is that they were all overdue, most of them long overdue. Mr. Cunningham's woefully incomplete response to Appeals' requests and his poor use of the extension that Appeals did give him were good reasons not to grant him more time, since more time would simply result in more delay.

### 4. Sustaining the lien

Mr. Cunningham argues that Appeals abused its discretion by sustaining the filing of the NFTL, because "[a] lien may prohibit taxpayer from finding gainful employment or getting funding to begin a business adventure [sic]." (He thereby seems to argue that Appeals failed to "balance[] the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary" under section 6330(c)(3)(C).) Filing an NFTL will usually be a much less intrusive collection mechanism than a levy, since that filing simply holds the agency's place in line, so to speak, while it waits for the taxpayer to acquire property that might be used to satisfy a tax liability. However, it is true that a lien may adversely affect a taxpayer in the ways that Mr. Cunningham suggests, so even the mere filing of an NFTL may sometimes call for some balancing of the IRS's collection need and the taxpayer's concerns.

[*23] However, Mr. Cunningham gave no information whatsoever to show that the lien filing would actually cause him any particular disadvantage. He described possible harm to a hypothetical taxpayer, but he did not show or even allege harm to himself in seeking "gainful employment" or difficulty in obtaining funding for a proposed "business []venture". If Mr. Cunningham's generality were sufficient to require the withdrawal of the NFTL in this instance, then that same generality could be invoked by every taxpayer in every instance, and the IRS could never file an NFTL. As we observed in Kyereme v. Commissioner, T.C. Memo. 2012-174, slip op. at 16:

> Rule 121(d) provides that an opposition to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial", whereas * * * [petitioner] did not state in any detail nor support with any evidence--not even his own affidavit or declaration--the allegations that would fully articulate his contention. Nor did he show that in the agency-level CDP hearing he made specific contentions supported by evidence--a showing he must make before making the contentions here. See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); 26 C.F.R. sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

The same is true for Mr. Cunningham.

Appeals did not abuse its discretion in sustaining the proposed levy and the filing of the NFTL nor in denying to Mr. Cunningham an IA, an OIC, or CNC status.

**[\*24]** To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.