T.C. Memo. 2014-246

UNITED STATES TAX COURT

SPENCER HOSIE AND DIANE RICE HOSIE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16162-13L.                          Filed December 11, 2014.

David B. Porter, for petitioners.

Matthew D. Carlson, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: In this collection due process (CDP) case, petitioners

seek review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determinations by

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times. All Rule references are to the Tax Court Rules of Practice and
Procedure. We round all monetary amounts to the nearest dollar.

**[*2]** the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of Federal tax lien (NFTL) and two notices of intent to levy. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to uphold the collection actions was proper as a matter of law. We agree and thus will grant the motion.

Background

The facts set forth below are based on the parties' pleadings and attached documents. Petitioners resided in California when they petitioned this Court.

Petitioners, both of whom are attorneys, have a long history of noncompliance with their Federal tax obligations. For 2002, 2003, 2005, 2006, 2008, 2010, and 2011 petitioners filed joint income tax returns but did not pay the balances due. This case concerns two of those years, 2006 and 2011. The IRS assessed the tax liabilities shown as due on petitioners' 2006 and 2011 returns--$807,337 and $718,224, respectively--and began collection efforts.

On December 10, 2012, the IRS sent petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, regarding their 2011 liability. Three days later, the IRS sent petitioners a Letter 1058 regarding their 2006 liability. Later that same month the IRS filed an NFTL regarding petitioners' 2011 liability and timely sent them a Letter 3172, Notice of Federal Tax Lien

[*3] Filing and Your Right to a Hearing Under IRC 6320. All letters were sent to petitioners' last known address at their residence in Belvedere, California.

On January 8, 2013, petitioners timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing. They listed their 2006 and 2011 years as the subject of this hearing request. They did not dispute their underlying tax liability for either year, and they did not request a collection alternative. They stated their intention to sell their personal residence to pay the balances due but indicated that "[i]t will take six to eight weeks to do so."

On February 19, 2013, the IRS acknowledged receipt of petitioners' hearing request, and a settlement officer (SO) from the IRS Appeals Office subsequently scheduled a telephone CDP hearing. On March 19, 2013, petitioners provided the SO with financial information indicating that their assets included (among other things) equity in real estate with an aggregate value of almost $9.3 million:

| Property | Fair market value | Loan balance | Estimated equity |
|---|---|---|---|
| Personal residence | $6,750,000 | $1,028,000 | $5,722,000 |
| Vacation home | 3,800,000 | 230,000 | 3,570,000 |

On March 29, 2013, the parties held a CDP hearing. Petitioners' representative did not contest petitioners' underlying tax liability for either 2006 or 2011 but instead proposed an installment agreement with a payment of $15,000

[*4] per month. By this time petitioners had defaulted on four previous installment agreements, all involving their 2006 tax liability. These prior agreements, executed in July 2009, April 2010, March 2011, and December 2011, required monthly payments ranging between $10,000 and $50,000 plus certain lump-sum payments. In each case, petitioners had made no payments or quickly reneged on their promises.

The SO indicated that any new installment agreement would have to include all outstanding tax liabilities and would be considered only if petitioners made a substantial upfront payment. The SO directed petitioners' attention to the $9.3 million of equity in their real estate as a source of funds to pay their tax liabilities. Petitioners stated their intention to sell their personal residence but requested that sale of their vacation home be delayed. They had previously informed the IRS of plans to sell their personal residence in order to pay their tax liabilities but had never followed through on those plans.

At the conclusion of the CDP hearing petitioners' representative said he would discuss with petitioners the possibility of making a substantial upfront payment. Respondent alleges that the SO scheduled a followup appointment with petitioners for April 5, 2013; petitioners deny agreeing to a specific date. Neither

**[*5]** petitioners nor their representative contacted the SO after the March 29, 2013, CDP hearing.

After waiting for 3-1/2 months with no word from petitioners, the SO reviewed the case file. He verified that the 2006 and 2011 assessments were properly made and that all other requirements of applicable law and administrative procedure had been met. The SO thereupon closed the case and on June 21 and 27, 2013, sent petitioners notices of determination sustaining the collection actions for 2006 and 2011, respectively. Petitioners timely sought review in this Court.

## Discussion

A.      Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520, (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. However, the nonmoving party "may not rest upon the mere allegations or denials" of his pleadings but

**[\*6]** "must set forth specific facts showing that there is a genuine dispute for trial." Rule 121(d).

Petitioners dispute whether the parties agreed to April 5, 2013, as a specific date to discuss a partial payment option. An SO is not obligated to negotiate indefinitely or wait any specific time after a CDP hearing before issuing a determination. See Kreit Mech. Assocs., Inc. v. Commissioner, 137 T.C. 123, 134 (2011); Kuretski v. Commissioner, T.C. Memo. 2012-262, aff'd, 755 F.3d 929 (D.C. Cir. 2014); Clawson v. Commissioner, T.C. Memo. 2004-106. Petitioners stated in their January 8, 2013, hearing request that they needed "six to eight weeks" to sell their personal residence; more than six months elapsed before the SO issued the notice of determination. The CDP hearing was held on March 29, 2013; when the SO heard nothing from petitioners by late June, he had waited long enough. Whether the parties explicitly agreed to a followup discussion on April 5, 2013, is not an issue of material fact, and petitioners have pointed to no other genuine dispute of material fact that would require trial. See Rule 121(d); Sundstrand Corp., 98 T.C. at 520. This case is therefore appropriate for summary adjudication.

**[\*7]** B.     Collection Due Process

Petitioners concede their underlying tax liabilities for 2006 and 2011. When there is no dispute concerning the underlying tax liability, we review the IRS' determination for abuse of discretion.  Goza v. Commissioner, 114 T.C. 176, 182 (2000).  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

We must determine whether the SO, in sustaining the collection actions: (1) properly verified that the requirements of applicable law and administrative procedure had been met; (2) considered any relevant issues petitioners raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).

After reviewing the record we conclude that the SO properly verified that all requirements of applicable law and administrative procedure had been met.  Petitioners assert that they did not receive a distinct IRS letter scheduling a CDP hearing for 2011 and that they "did not contemplate that the 2011 tax year * * * [would be] involved" in the hearing.  But their CDP hearing request explicitly requested a hearing for both 2006 and 201l, and their representative discussed

**[\*8]** both years with the SO during the hearing.  See sec. 301.6330-1(d)(2), Q&A-D2, Proced. & Admin. Regs. (providing that to the extent practicable, a CDP hearing for one tax period will be combined with any CDP hearings the taxpayer has requested for other tax periods).  There was no meaningful distinction between the two years; the only relevant issue concerned petitioners' eligibility for an installment agreement, and the facts pertinent to that question were the same for all open years.  Petitioners do not contend that they were harmed in any way by their alleged nonreceipt of a distinct IRS letter scheduling a CDP hearing for 2011. Assuming arguendo that they did not receive such a letter, any error was harmless.

Petitioners next argue that the SO abused his discretion by denying their request for an installment agreement.  In its discretion, the IRS may accept an installment agreement if it determines that doing so will facilitate full or partial collection of a tax liability.  See sec. 6159(a).  The IRS also has discretion to reject a proposed installment agreement (subject to certain restrictions when the liability is below $10,000).  See Thompson v. Commissioner, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.  This Court gives due deference to the determinations that the IRS makes in the exercise of this discretionary authority.  See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Marascalco v. Commissioner, T.C. Memo. 2010-130, aff'd, 420 Fed. Appx. 423 (5th Cir. 2011).

[*9] We will not substitute our judgment for that of the IRS, recalculate a taxpayer's ability to pay, or independently determine what would be an acceptable collection alternative. See Thompson, 140 T.C. at 179; O'Donnell v. Commissioner, T.C. Memo. 2013-247.

The SO rejected petitioners' proposed installment agreement after determining that their tax liabilities could be fully or partially satisfied by liquidating or borrowing against their assets ($9.3 million of equity in their residence and vacation home). See Internal Revenue Manual (IRM) pt. 5.14.1.4 (5) and (6) (June 1, 2010) ("Taxpayers do not qualify for installment agreements if balance due accounts can be fully or partially satisfied by liquidating assets[.]"); Boulware v. Commissioner, T.C. Memo. 2014-80 (finding that settlement officer's reliance on this IRM provision was not an abuse of discretion). Petitioners made no showing of ill health, economic hardship, or other circumstance warranting an exception from this general rule. See Eichler v. Commissioner, 143 T.C. __, __ (slip op. at 16-17) (July 23, 2014); IRM pt. 5.19.1.6.3(2) (Apr. 1, 2011); id. pt. 5.14.1.4(5) and (6). Between 2009 and 2013 petitioners had defaulted on four previous installment agreements, one of which involved lower monthly payments than the $15,000 they now promised to make. The SO did not abuse his discretion in rejecting this offer.

[*10] Petitioners next argue that the SO abused his discretion by refusing to withdraw the NFTL filing for 2011. The IRS' decision whether to withdraw an NFTL is discretionary: "If the * * * [IRS] determines conditions for withdrawal are present, the * * * [IRS] may (but is not required to) authorize the withdrawal." Sec. 301.6323(j)-1(c), Proced. & Admin. Regs. Even where the IRS accepts an installment agreement, withdrawal of an NFTL filing is not automatic. See Blackman v. Commissioner, T.C. Memo. 2013-194.

Petitioners contend that an NFTL can complicate the sale of realty and that the SO should have withdrawn the NFTL to give them more time to sell their residence. Petitioners' argument is entirely hypothetical; they set forth no facts to demonstrate that the existence of the NFTL actually incommoded sale of the property or that withdrawal of the NFTL would facilitate collection of their tax liabilities. Speculation of this sort is insufficient to show that the SO abused his discretion in declining to withdraw the NFTL for 2011. See Cunningham v. Commissioner, T.C. Memo. 2014-200.

Finally, petitioners assert that the SO did not properly balance the need for efficient collection of taxes with petitioners' concerns that the collection action be no more intrusive than necessary. But the SO was far from ungenerous: He was willing to consider a collection alternative despite petitioners' ten-year history of

**[*11]** noncompliance, their default on four previous installment agreements, and their possession of $9.3 million of equity in their residence and vacation home. He gave them three months after the CDP hearing to come forward with a serious proposal that would include a significant upfront payment. He issued the notices of determination only after encountering a lengthy period of silence from petitioners; this was not an abuse of discretion by any stretch of the imagination. Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and affirm the proposed collection actions.

<u>An appropriate order and</u>

<u>decision will be entered</u>.