T.C. Memo. 2016-16

UNITED STATES TAX COURT

MICHAEL G. MORRIS AND MONICA CLAY-MORRIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14268-14L.                    Filed February 4, 2016.

Michael G. Morris and Monica Clay-Morris, pro sese.

Thomas Alan Friday and Horace Crump, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge:  The Internal Revenue Service (IRS) Appeals Office sent

petitioners a Notice of Determination Concerning Collection Action(s) Under

Section 6320 and/or 6330 (notice of determination) with respect to notices of

Federal tax lien (NFTLs) and notices of intent to levy filed to collect petitioners'

unpaid self-reported tax liabilities for 2008-11.  In the notice of determination,

**[*2]** respondent sustained the NFTLs for tax years 2008-10 and 2011, respectively, and the proposed levy actions for tax years 2009-10 and 2011, respectively.[1] Pursuant to section 6330(d)(1),[2] petitioners seek review of respondent's determination to sustain the filing of the NFTLs and the proposed levy actions.

## FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners resided in Mississippi when their petition was filed.

Petitioner husband (Dr. Morris) is a physician who specializes in obstetrics and gynecology. In 2006 the Morrises moved from Pennsylvania to central Mississippi in order for Dr. Morris to pursue a practice opportunity with an obstetrics and gynecology physicians group in the area. After encountering difficulties with the physicians group, Dr. Morris sought employment from a local hospital, Central Mississippi Medical Center (CMMC). Dr. Morris and the

---

[1]As explained below, respondent abated in full petitioners' 2008 tax liability and additions to tax. As a result, respondent no longer seeks to collect petitioners' tax liability and additions to tax for this year.

[2]All section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] hospital negotiated a physicians recruitment contract whereby the hospital would help cover startup costs if he maintained a new practice in the area for three years. Dr. Morris opened his practice in 2006 and received payments from the hospital in 2006 and 2007 in accordance with the physicians recruitment contract. In 2008 and 2009 he received Forms 1099-MISC, Miscellaneous Income, from CMMC to report the disbursement of these funds.

Petitioners self-reported their tax liabilities for tax years 2008-11 and failed to pay the liabilities for these years. Their tax returns for tax years 2009-11, the years at issue, were filed after their respective due dates, taking into account extensions of time to file.[3]

At trial petitioners testified that they were confused over how to report income from the physicians recruitment contract. They testified that they originally reported income from the contract on their tax returns for tax years 2006 and 2007, the years they received the funds from CMMC, rather than on their returns for tax years 2008 and 2009, the years in which they received Forms 1099-

---

[3]Petitioners' 2009 tax return was filed on September 5, 2011. Taking into account an extension of time to file, that return was due on or before October 15, 2010. Petitioners' 2010 tax return was filed on December 26, 2011. Taking into account an extension of time to file, that return was due on or before October 15, 2011. Petitioners' 2011 tax return was filed November 26, 2012. Taking into account an extension of time to file, that return was due on or before October 15, 2012.

**[*4]** MISC. They testified that this confusion caused them to seek out advice from different tax return preparers and amend their tax returns multiple times. In one instance, petitioners testified that they explained to their return preparer the terms of the physicians recruitment contract but did not provide the return preparer with a copy of the contract. The contract is not in the record. Dr. Morris also testified that he suffered financial difficulties in 2008 because of disagreements with his billing company that caused him to draw down his retirement funds in that year.

On January 26, 2012, respondent received a claim for credit from petitioners for overpayment of their 2006 tax liability. Later that year, respondent disallowed their claim because it was filed more than three years after petitioners filed their 2006 tax return and more than two years after they paid their outstanding liability for 2006.

Appeals Process for 2008-10 Liabilities

On May 9, 2012, respondent issued a Notice of Intent to Levy and Notice of Your Right to a Hearing Under I.R.C. 6330 (notice of intent to levy) to petitioners with respect to their tax liabilities for 2008-10. On May 22, 2012, respondent issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. 6320 (notice of lien filing) for this same period.

[*5]   Petitioners timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, in response to these notices.  On the form petitioners requested collection alternatives--specifically, an installment agreement and an offer-in-compromise, and requested that their account be placed in uncollectible status.  Petitioners also attached a letter to the form in which they contended that the proposed levy was premature because the amounts owed were still at issue.  Specifically, they stated that they had filed amendments to their tax returns that would significantly decrease the amounts owed.  They also stated that the IRS was reviewing their overpayment of tax for a previous year and that the overpayment would help to substantially reduce their tax liabilities and put them in a position to either pay past due tax or make installment payments.

On July 17, 2012, respondent's settlement officer (SO) sent petitioners a letter offering them the opportunity to schedule a face-to-face collection due process (CDP) hearing by August 6, 2012, if they submitted:  (1) a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting documentation; (2) amended returns for review and consideration; and (3) proof of estimated tax payments.  Petitioners submitted Form 433-A and thereafter requested to reschedule their face-to-face

[*6] hearing to August 28, 2012.  Soon after, petitioners requested to reschedule their hearing to September 4, 2012.

On August 5, 2012, petitioners submitted Form 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien.  On the form petitioners stated that:  (1) the NFTL was filed prematurely or not in accordance with IRS procedures; (2) withdrawal would facilitate collection of the tax; and (3) petitioners, or the Taxpayer Advocate acting on behalf of petitioners, believed withdrawal to be in the best interest of the taxpayer and the Government.

On September 4, 2012, a face-to-face hearing was held.  During the hearing the SO reviewed petitioners' Form 433-A and requested supporting documentation in order to make a determination of petitioners' ability to pay.  Petitioners also challenged their underlying liabilities during the hearing and questioned how the hearing could take place when their amended returns were still being processed by the Appeals Office.  On September 11, 2012, petitioners' CDP hearing was suspended pending the outcome of their challenge to their 2008 and 2009 tax liabilities.

On November 26, 2012, petitioners filed amended returns for 2008 and 2009.

**[*7]** <u>Appeals Process for 2011 Liability</u>

On December 7, 2012, respondent issued a notice of intent to levy to petitioners with respect to their 2011 tax liability. On December 20, 2012, respondent issued a notice of lien filing for this same period.

Petitioners timely submitted a request for a CDP hearing for this period and requested collection alternatives--specifically, an installment agreement or an offer-in-compromise, and alternatively requested their account be placed in uncollectible status. They also requested lien subordination, discharge, and withdrawal.

On February 7, 2013, the SO sent petitioners a letter offering them the opportunity to schedule a telephone hearing for February 26, 2013, and requested they submit a completed Form 433-A with supporting documentation and proof of estimated tax payments in order to pursue an installment agreement or an offer-in-compromise. The letter also noted that petitioners' tax years 2008-09 had open liability issues that were being reviewed by an Appeals officer.

A telephone conference was held on February 26, 2013. During the conference the SO requested an updated Form 433-A with supporting documentation so that the SO could consider a collection alternative. Petitioners subsequently provided some of the requested documentation to the SO.

**[*8]** <u>Subsequent Correspondence Between Petitioners, the Appeals Office, and the SO</u>

Petitioners and the SO negotiated a proposed installment agreement throughout 2013. Petitioners did not propose a written offer-in-compromise. On June 5, 2013, an Appeals officer issued a decision regarding petitioners' challenge to their 2008 and 2009 tax liabilities, and their case was taken out of suspense status to continue the CDP hearing process. Respondent subsequently accepted petitioners' amended 2009 tax return.

On August 13, 2013, Dr. Morris requested the Appeals Office to send Form 433-D, Installment Agreement, and Form 12257, Summary Notice of Determination, Waiver of Right to Judicial Review of a Collection Due Process Determination, and Waiver of Suspension of Levy Action. Dr. Morris wanted to review these forms for resolution of the case.

On August 27, 2013, the Appeals Office received notification that petitioners had filed for bankruptcy with the U.S. Bankruptcy Court for the Southern District of Mississippi under 11 U.S.C. chapter 7, No. 13-02540-ee. Petitioners' case was suspended pending the bankruptcy case outcome. They were discharged from bankruptcy on December 26, 2013, and as a result of the

[*9] bankruptcy proceeding respondent abated in full their 2008 tax liability and additions to tax.

On April 15, 2014, the SO mailed a letter to petitioners stating that their CDP hearing had been resumed on account of the bankruptcy discharge and that they still had outstanding tax liabilities subject to the hearing. In the letter the SO set the final deadline for petitioners to submit requested documentation for April 29, 2014. The final deadline was subsequently extended to May 5, 2014. On May 6, 2014, petitioners provided respondent with documents regarding issues previously raised and considered during the CDP hearing.

Notice of Determination and Petition to Tax Court

On May 21, 2014, the Appeals Office issued the notice of determination sustaining the NFTLs for tax years 2008-10 and 2011, respectively, and the proposed levy actions for tax years 2009-10 and 2011, respectively. The notice of determination stated that the NFTLs were appropriate at the time they were filed and that a collection alternative could not be granted because petitioners would not agree to the proposed installment agreement. Petitioners timely filed a petition with this Court.

Petitioners claim the SO did not take into account the discharge of their 2008 tax liability and overpayment of 2006 tax to calculate monthly payments for

**[*10]** an installment agreement. They also claim that he refused to negotiate a new installment agreement and provide a new tax balance showing that the 2008 tax liability was discharged and that their tax liability for 2006 had been overpaid.

In their petition, petitioners argue that the notice of determination is erroneous and constitutes an abuse of discretion by respondent because: (1) petitioners are entitled to first-time penalty abatement; (2) the lien was filed prematurely; (3) the NFTL caused undue hardship; (4) petitioners are entitled to abatement of penalties and interest on account of reasonable cause and IRS delay; (5) petitioners are entitled to a credit for overpayment of 2006 tax; (6) the SO reviewing their case engaged in abusive practices; (7) the installment agreement that the SO proposed was not the least intrusive method of collection and would have created greater hardship; (8) the penalty assessments against petitioners were in violation of an Internal Revenue Manual (IRM) provision that requires a manager to approve penalty assessments; and (9) the levy was not the least intrusive method of collection.

OPINION

I.     Administrative Hearings Under Section 6330

Section 6301 empowers the Commissioner to collect the taxes imposed by the internal revenue laws. To further that objective, Congress has provided that

[*11] the Commissioner may effect the collection of taxes by, among other methods, liens and levies. Pursuant to section 6321, the Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for Federal taxes upon demand for payment and failure to pay. See Iannone v. Commissioner, 122 T.C. 287, 293 (2004). The lien arises automatically on the date of assessment and persists until the tax liability is satisfied or becomes unenforceable by reason of lapse of time. Sec. 6322; Iannone v. Commissioner, 122 T.C. at 293. Section 6331(a) authorizes the Commissioner to levy upon all property or property rights of any taxpayer liable for any tax who neglects or refuses to pay that liability within 10 days after notice and demand for payment.

When the Commissioner pursues collection by lien or levy, he must notify the affected taxpayer in writing of his or her right to a CDP hearing with an impartial Appeals officer. See secs. 6320(a) and (b) (relating to liens), 6330(a) and (b) (relating to levies). Where a hearing is requested, whether in response to an NFTL filing or a proposed levy, the presiding Appeals officer must satisfy the standards set forth in section 6330. See secs. 6320(c), 6330(c).

Specifically, as part of the CDP hearing, the Appeals officer must take into consideration: (1) verification that the requirements of applicable law and

**[\*12]** administrative procedure have been met; (2) relevant issues raised by the taxpayer concerning the collection action; and (3) whether the proposed collection action balances the need for the efficient collection of tax with the taxpayer's legitimate concern that the collection action be no more intrusive than necessary. Sec. 6330(c)(3). Relevant issues may include appropriate spousal defenses, challenges to the appropriateness of the collection action, and potential collection alternatives such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A).

## II.    Judicial Review

A determination made by the Appeals Office under section 6330 to sustain a proposed levy may be reviewed by this Court. Sec. 6330(d)(1); see Rules 330-334. In general, upon review of a notice of determination sustaining a collection action the Court will limit its review to those issues properly raised during the administrative hearing. Giamelli v. Commissioner, 129 T.C. 107, 114-115 (2007); Magana v. Commissioner, 118 T.C. 488, 493 (2002). Where the validity of the underlying liability is properly at issue during the hearing, we review that issue de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). We review other administrative determinations of the Appeals Office for abuse of discretion. Id.

[*13] Section 6330(c)(2)(B) permits challenges to the validity of the underlying liability in collection proceedings only where the taxpayer did not receive a notice of deficiency or otherwise have an opportunity to challenge the liability.  The parties agree that petitioners had no prior opportunity before their CDP hearings to dispute their underlying liabilities and that they are entitled to challenge the liabilities in this proceeding.  See Callahan v. Commissioner, 130 T.C. 44, 50 (2008).

Petitioners' underlying liabilities consist of outstanding tax liabilities and additions to tax.  Petitioners challenge their outstanding tax liabilities for tax years 2008-09 and the additions to tax for tax years 2008-11.  The parties agree that the tax liability and the addition to tax for 2008 have been discharged in bankruptcy and are no longer at issue.  The parties also agree that petitioners' tax liability for 2009 is no longer at issue.  The only underlying liabilities at issue are additions to tax assessed by respondent for failure to timely pay tax for tax years 2009-11.  Accordingly, we review these liabilities de novo.  See Sego v. Commissioner, 114 T.C. at 610.  Petitioners bear the burden of proof to show error in respondent's determinations as to their underlying liabilities, but respondent bears the burden of production with respect to the additions to tax assessed against petitioners.  See sec. 7491(c); Rule 142(a).

[*14] III.    Petitioners' Section 6651(a)(2) Additions to Tax for 2009-11

Respondent assessed section 6651(a)(2) additions to tax for failure to timely pay tax for tax years 2009-11.  Section 6651(a)(2) provides for an addition to tax when a taxpayer fails to timely pay the tax shown on a return unless the taxpayer proves that the failure was due to reasonable cause and not due to willful neglect.  Reasonable cause for purposes of section 6651(a)(2) depends upon whether the taxpayer, notwithstanding the exercise of ordinary business care and prudence, was in fact unable to pay or would suffer undue hardship if payment were made.  See Ruggeri v. Commissioner, T.C. Memo. 2008-300.

Respondent submitted sufficient evidence to show that petitioners paid their tax liabilities untimely for the years at issue and so met his burden of production under section 7491(c).  Petitioners argue they exercised ordinary business care and prudence but nevertheless suffered undue hardship in attempting to timely pay their tax liabilities.  To support their claim, petitioners rely on provisions in the IRM that specify situations where reasonable cause may be found.  Specifically, petitioners cite the IRM to contend that notwithstanding the fact they exercised ordinary business care and prudence they:  (1) made a mistake in filing their tax returns and were unable to comply within the prescribed time; (2) were ignorant of the law with respect to a specific type of income reported on their return;

**[\*15]** (3) followed advice provided by a tax professional; and (4) followed oral advice from the IRS. See IRM pt. 20.1.1.3 (Aug. 20, 1998).

Petitioners have failed to show that they exercised ordinary business care and prudence. The regulations state that taxpayers will be considered to have exercised ordinary business care and prudence if they made reasonable efforts to conserve sufficient assets in marketable form to satisfy their tax liability and nevertheless were unable to pay all or a portion of the tax when it became due. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioners failed to produce evidence to show other than their unpersuasive testimony that they tried to timely satisfy their tax liabilities.

Although we do not doubt that petitioners suffered financial difficulties during the years at issue, we cannot determine on the basis of the record whether they made reasonable efforts to satisfy their tax liabilities notwithstanding these difficulties. Petitioners may have amended their 2006-09 tax returns multiple times in an attempt to correct mistakes reporting funds received as part of Dr. Morris' physicians recruitment contract, but these attempts occurred after the payments for these years were due. Similarly, their bankruptcy filing occurred almost a year after the last of their payments for 2009-11, the years at issue, were due. From the record, we cannot determine whether petitioners made an effort to

[*16] conserve assets in 2009-11 before submitting untimely returns. Therefore, petitioners did not meet their burden of proof to show they exercised ordinary business care and prudence but nevertheless suffered undue hardship in attempting to timely pay their tax liabilities for 2009-11. Respondent's determination is sustained with respect to this issue.

IV.    Other Issues Reviewed for Abuse of Discretion

In reviewing a settlement officer's determination to sustain liens and levies for abuse of discretion, we will reject the determination only if it is arbitrary, capricious, or without sound basis in fact or law. See Rule 142; Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). We do not substitute our judgment for that of the settlement officer, and we do not decide independently whether we believe the lien notices or proposed levy actions should be withdrawn. See Murphy v. Commissioner, 125 T.C. at 320. Instead, we consider whether, in the course of making the determination, the SO (1) verified that the requirements of applicable law and administrative procedure have been met,[4] (2) considered any relevant issue raised by the taxpayer that relates to the

_____

[4]In Dinino v. Commissioner, T.C. Memo. 2009-284, we indicated that we need not consider the verification requirement unless the taxpayer adequately raised it in the petition. Although petitioners did not explicitly challenge the verification requirement in their petition, we believe their argument that the lien

(continued...)

[*17] unpaid tax or the proposed lien and levy actions, and (3) determined whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. Sec. 6330(c)(1)-(3).

Petitioners raised several issues during their CDP hearing, including collection alternatives, lien withdrawal, lien discharge, lien subordination, challenges to the appropriateness of the collection action, and challenges to their underlying liabilities. Petitioners also requested penalty abatement, including first-time penalty abatement, based on reasonable cause for ignorance of the law and following the advice of a tax return preparer.

Petitioners chiefly contend that the NFTLs and the proposed levy actions hamper their ability to pay their tax liabilities and prevent Dr. Morris from pursuing employment. The record indicates that the SO considered lien relief measures and discussed steps for petitioners to take to apply for such relief. Petitioners did not follow the SO's advice, did not provide additional documentation for the SO to consider with respect to their ability to pay, and did

---

[4](...continued)
was filed prematurely and in violation of the IRM is sufficient to properly raise the verification requirement.

**[\*18]** not establish the appropriateness of a withdrawal of the NFTL or a subordination of the lien or a discharge of the property subject to the lien.

When a Federal tax lien is in place, the IRS is permitted to withdraw the notice of Federal tax lien under four situations, including where "the withdrawal of such notice will facilitate the collection of the tax liability" or "the withdrawal of such notice would be in the best interests of the taxpayer * * * and the United States." Sec. 6323(j). The IRS may also subordinate a tax lien on specific property by issuing a certificate of subordination. Sec. 6325(d). Somewhat similarly, the IRS may also issue a certificate of discharge of any part of a property subject to a Federal tax lien without full payment being required. Sec. 6325(b)(1)-(3).

All three of these lien relief measures, as expressed in statutes and regulations, are permissive, and the IRS is generally not required to withdraw, subordinate, or discharge even if the conditions of a measure are fully met. See, e.g., Taggart v. Commissioner, T.C. Memo. 2013-113, at \*16-\*17 ("Section 6323(j) uses discretionary, not mandatory, language, and respondent is not required to withdraw the lien even for one of the reasons stated in section 6323(j)"); sec. 301.6325-1(b)(1), Proced. & Admin. Regs. (providing that an appropriate official may, in his or her discretion, issue a certificate of discharge of

**[\*19]** any part of a subject property under certain circumstances); sec. 301.6325-1(d)(1), Proced. & Admin. Regs. (providing that an appropriate official may, in his or her discretion, issue a certificate of subordination of a lien under certain circumstances). Accordingly, we cannot conclude that the settlement officer abused his discretion with regard to these permissive lien relief measures, especially in the light of petitioners' failure to provide relevant information during the CDP hearings.

In their petition and at trial petitioners provided other contentions for finding that the notice of determination was erroneous and constitutes an abuse of discretion by respondent. Many of these arguments hinge on the process by which the lien notices were filed. Rather than address each argument separately, we note that petitioners have failed to carry their burden with respect to these issues. For example, petitioners' request for first-time penalty abatement generally requires not having penalty reversals in the preceding three years and having reasonable cause for failure to pay tax. See IRM pt. 20.1.1.3.6.1 (Aug. 5, 2014). In the notice of determination, respondent states that petitioners' account transcript for 2007 contained penalty reversals and petitioners did not show reasonable cause for their failure to pay. Although there are limited exceptions to the general rule for

**[\*20]** first-time penalty abatement, petitioners did not provide sufficient evidence to dispute respondent's determination with respect to this issue.

For some of their contentions--such as their claim that the assessments were in violation of an IRM provision that requires a manager to approve penalty assessments--petitioners provided no evidence to show that this was the case. Even if respondent failed to comply with the provisions of the IRM, those provisions are simply intraagency operating procedures; they are not judicially enforceable against the agency. First Ala. Bank, N.A. v. United States, 981 F.2d 1226, 1230 n.5 (11th Cir. 1993); see also Valen Mfg. Co. v. United States, 90 F.3d 1190, 1194 (6th Cir. 1996); United States v. Horne, 714 F.2d 206, 207 (1st Cir. 1983). The procedures in the IRM do not confer rights on taxpayers. Horne, 714 F.2d at 207; United States v. Mapp, 561 F.2d 685, 690 (7th Cir. 1977). In any event, we conclude the rules were not violated.

Finally, petitioners assert that they have an overpayment available from tax year 2006 that should be applied against their liabilities for 2009-11. Contrary to their assertions, their alleged overpayment represents a mere claim of an overpayment that was subsequently denied by the IRS. This Court lacks jurisdiction to adjudicate such an overpayment claim in this collection proceeding.

[*21]  See Weber v. Commissioner, 138 T.C. 348, 371-372 (2012); Greene-Thapedi v. Commissioner, 126 T.C. 1, 13 (2006).

On the basis of the record, we find that the SO verified that the requirements of applicable law and administrative procedure were followed and that in sustaining the filing of the NFTLs and proposed levy actions the SO properly balanced "the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).  For these reasons, respondent did not err in sustaining the filing of the NFTLs and the proposed levy actions.

We have considered the other arguments of the parties, and they are not material to our conclusions.

To reflect the foregoing,

Decision will be entered

for respondent.