T.C. Memo. 2020-106

UNITED STATES TAX COURT

NORRIS A. DODSON AND HELEN M. DODSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7859-19L.                          Filed July 9, 2020.

Norris A. Dodson and Helen M. Dodson, pro sese.

<u>Stephen C. Welker</u>, <u>Bartholomew Cirenza</u>, and <u>William J. Gregg</u>, for

respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioners

seek review of a determination by the Internal Revenue Service (IRS or respon-

dent) to uphold collection actions.  The parties have filed cross-motions for sum-

mary judgment under Rule 121, addressed principally to the question of petition-

[*2] ers' eligibility for an installment agreement (IA).[1]  We find no disputes of material fact and conclude that the settlement officer (SO) did not abuse her discretion in sustaining the proposed collection actions.  We will accordingly grant respondent's motion and deny petitioners' cross-motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits.  Petitioners resided in the District of Columbia when they filed their petition.

Petitioners are in the real estate business, earning income from real estate brokerage and from rental of properties that they own.  They filed delinquent Federal income tax returns for 2013, 2014, 2015, and 2016.  They did not pay, by estimated tax or otherwise, the full amounts of tax shown as due on those returns.  The IRS assessed the amounts shown as due along with additions to tax for failure to file, failure to timely pay, and failure to pay estimated tax.

On April 23, 2018, the IRS sent petitioners a Notice CP92, Seizure of Your State Tax Refund and Notice of Your Right to a Hearing.  This notice informed petitioners that the IRS had seized their $222 State income tax refund and applied

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] it against their 2013 Federal income tax liability, which then exceeded $16,000. Petitioners timely requested a CDP hearing and indicated they were interested in pursuing an IA. They did not challenge their underlying tax liability for 2013.

On July 9, 2018, the IRS sent petitioners a Notice CP90, Intent to Seize Your Assets and Notice of Your Right to a Hearing, informing petitioners of its intent to levy to collect their outstanding liabilities for 2014-2016, which exceeded $163,000 in the aggregate. Petitioners timely requested a CDP hearing, expressing interest in an IA or an offer-in-compromise (OIC). They did not dispute the tax liabilities they had reported for these years.

Petitioners' request with respect to the 2013 liability was assigned to an SO in the IRS Appeals Office in Holtsville, New York. After reviewing petitioners' administrative file the SO confirmed that their 2013 liability had been properly assessed and that all other requirements of applicable law and administrative procedure had been met.

The SO sent petitioners letters acknowledging receipt of their hearing request for 2013 and instructing them to submit a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, in order for her to consider a collection alternative. On September 19, 2018, the SO

[*4] called petitioners' representative, who indicated that his clients were seeking an IA calling for payments of $1,000 per month.

Petitioners' representative submitted an unsigned Form 433-A along with supporting bank statements and Schedules C, Profit or Loss From Business, for their real estate brokerage businesses. The Form 433-A and attachments showed that petitioners had $615,000 of equity in their personal residence and at least $49,000 in financial accounts. The Form 433-A did not disclose the value of the equity in their rental properties, which included at least seven separate units.

The Form 433-A disclosed $3,981 of monthly income, all of which was attributable to their rental properties. The form did not include any of their self-employment income from the real estate brokerage businesses. The Schedules C that they submitted showed that in 2016 Ms. Dodson had net profit of $97,559 and Mr. Dodson had net profit of $3,556. The Form 433-A listed monthly expenses in excess of $9,000, but petitioners failed to submit substantiation for $3,993 of these expenses (for health insurance, vehicles, and dependent care).

On September 27, 2019, the SO called the representative and explained that petitioners' financial information showed that they were able to pay their 2013 liability in full and thus were ineligible for an IA. On November 6, 2019, the representative called and explained that petitioners had another open CDP case for

[*5] 2014-2016 and were interested in resolving all four years by making a downpayment of $70,000 and executing an IA for the balance. The representative also faxed a request for abatement of the additions to tax.

The SO said that she would have the 2014-2016 CDP case assigned to her and would research whether petitioners qualified for first-time abatement. She advised that, if petitioners wanted the additions to tax abated for reasonable cause, they would need to provide a statement explaining their circumstances. Neither petitioners nor their representative ever submitted such a statement.

The CDP case for 2014-2016 was thereafter assigned to the SO. After reviewing petitioners' administrative file she confirmed that the 2014-2016 liabilities had been properly assessed and that all other requirements of applicable law and administrative procedure had been met. On December 13, 2018, the SO and the representative discussed both CDP requests. During the call the representative noted that petitioners had just filed their 2017 return, which showed an unpaid balance due exceeding $166,000.

The SO explained that petitioners were not eligible for an IA because they had sufficient assets to pay their liabilities in full. The SO offered them the option of a 60-day extension of time to complete full payment. See Internal Revenue Manual (IRM) pt. 8.22.7.6 (Nov. 5, 2013) (permitting a 60-day extension as a col-

[*6] lection alternative).  She noted that petitioners needed to pay their estimated tax for 2018 in order to qualify for any relief.  The representative indicated that he would discuss the 60-day extension and estimated tax payment with his clients.

Because of a lapse in Government funding, the SO was furloughed between December 22, 2018, and January 25, 2019.  During February the SO spoke with the representative twice, explaining that petitioners did not qualify for an IA or an OIC because they had sufficient assets to pay their liabilities in full and had supplied no evidence of any special circumstances.  The SO again asked whether petitioners wanted to enter into a 60-day extension agreement.  On March 7, 2019, the representative left a voicemail indicating that petitioners were unwilling to commit to fully pay at the end of that period.  The SO accordingly decided to close the cases.

On April 15, 2019, the IRS issued separate notices of determination sustaining the two collection actions and concluding that petitioners did not qualify for first-time abatement of the additions to tax.  Petitioners timely petitioned for redetermination, contending that an IA was an appropriate collection alternative and that the levy would cause them financial harm.  On February 13, 2020, respondent filed a motion for summary judgment, and on May 14, 2020, petitioners filed a cross-motion.

**[*7]**                              <u>Discussion</u>

A.      <u>Summary Judgment Standard and Standard of Review</u>

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 116 T.C. 73, 74 (2001). We may grant summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Elec. Arts, Inc. & Subs. v. Commissioner</u>, 118 T.C. 226, 238 (2002). The parties agree on all questions of basic fact and have expressed that consensus by filing cross-motions for summary judgment. We conclude that this case is appropriate for summary adjudication.

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity of the underlying tax liability is at issue, we review the Commissioner's determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). In other respects we review the IRS action for abuse of discretion. <u>Id.</u> at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

**[*8]** Petitioners do not dispute the tax liabilities they reported on their 2013-2016 returns. However, they did request abatement of the additions to tax. Nothing in the record indicates that petitioners had a prior opportunity to challenge their liability for the additions to tax.

There is some uncertainty in our precedents as to whether a de novo or an abuse-of-discretion standard of review applies in a situation such as this.[2] Because we would sustain the SO's resolution of the first-time abatement issue under either standard of review, we need not decide which standard applies. See Dixon v. Commissioner, 141 T.C. 173, 184 & n.6 (2013); Estate of Adell v. Commissioner, T.C. Memo. 2014-89, 107 T.C.M. (CCH) 1463, 1466; Golub v. Commissioner, T.C. Memo. 2013-196, 106 T.C.M. (CCH) 173, 174-175. We review under an abuse-of-discretion standard the SO's decision to reject petitioners' request for an IA. See Orum v. Commissioner, 123 T.C. 1, 12-13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005).

---

[2]In Love v. Commissioner, T.C. Memo. 2019-92, we applied a de novo standard of review to an SO's denial of the taxpayer's request for abatement of additions to tax under the IRS' first-time abatement policy. See also Dykstra v. Commissioner, T.C. Memo. 2017-156, 114 T.C.M. (CCH) 183, 187 ("A taxpayer's underlying tax liability includes penalties and additions to tax that are part of the unpaid tax that the Commissioner seeks to collect."). On the other hand, in Kopstad v. Commissioner, T.C. Memo. 2018-139, and Morris v. Commissioner, T.C. Memo. 2016-16, we applied abuse-of-discretion review when considering similar challenges with respect to first-time abatement.

**[*9]** B.      Abatement of Additions to Tax

The Code imposes additions to tax for failure to timely file a return, failure timely to pay tax due, and failure to pay estimated tax.  See secs. 6651(a)(1) and (2), 6654.  In certain circumstances the IRS will agree to abate the additions to tax under section 6651(a)(1) and (2) for the first time that a taxpayer is subject to them, i.e., for a single return.  See IRM pt. 20.1.1.3.3.2.1 (Nov. 21, 2017).  This relief is thus referred to as "first-time abatement."

Petitioners could be eligible for such relief only for the first year for which the additions to tax were imposed, here 2013.  See id. para. (2).  But in order to be eligible a taxpayer must have filed all required returns and paid (or arranged to pay) any tax currently due.  Ibid.  At the time of the hearing petitioners had not paid their estimated tax for 2018 and had outstanding liabilities for 2014-2016 that they were unwilling to pay.  The SO correctly concluded that they were ineligible for first-time abatement.

Abatement of these additions to tax could also be justified on grounds of "reasonable cause."  Sec. 6651(a)(1) and (2); cf. sec 6654(e)(3) (requiring that the taxpayer be retired or disabled and show reasonable cause).  The SO invited peti-tioners' representative to submit a statement of reasonable cause explaining their failures, but he declined.  Petitioners have neither alleged that they had reasonable

**[*10]** cause nor submitted any evidence to substantiate the existence of reasonable cause. Accordingly, we conclude that they were not entitled to abatement of the additions to tax for 2013, 2014, 2015, or 2016.

C.      Other Issues

In deciding whether the SO abused her discretion in any other respect, we consider whether she: (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioners raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record establishes that the SO properly discharged all of her responsibilities under section 6330(c).

Section 6159 authorizes the Commissioner to enter into an IA if he determines that it will facilitate full or partial collection of a taxpayer's unpaid liability. See Thompson v. Commissioner, 140 T.C. 173, 179 (2013). Subject to exceptions not relevant here, the decision to accept or reject an IA lies within the Commissioner's discretion. See Rebuck v. Commissioner, T.C. Memo. 2016-3; Kuretski v. Commissioner, T.C. Memo. 2012-262, aff'd, 755 F.3d 929 (D.C. Cir. 2014); sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs. We will not substitute our

**[*11]** judgment for the SO's, recalculate the taxpayer's ability to pay, or independently determine what would be an acceptable offer.  See Thompson, 140 T.C. at 179; Lipson v. Commissioner, T.C. Memo. 2012-252.

In considering a taxpayer's eligibility for an IA an SO does not abuse her discretion by following guidelines set forth in the IRM.  See Orum, 123 T.C. at 13; Miss Laras Dominion Inc. v. Commissioner, T.C. Memo. 2012-203.  The IRM provides that, in the absence of special circumstances such as old age, ill health, or economic hardship, a taxpayer must liquidate assets in order to qualify for an IA.  IRM pt. 5.14.1.4(5) (Sept. 19, 2014); see Hosie v. Commissioner, T.C. Memo. 2014-246 (finding no abuse of discretion when an SO rejected an IA because the taxpayers declined to liquidate assets); Mootz v. Commissioner, T.C. Memo. 2007-303 (finding no abuse of discretion when an SO rejected an OIC because the taxpayer had the ability to pay in full from equity in assets).

The SO concluded that petitioners were ineligible for an IA because they could fully satisfy their 2013-2016 tax liabilities by borrowing against the equity in their primary residence, which their Form 433-A represented to be $615,000. (Given that figure, the SO did not need to consider the $49,000 in petitioners' financial accounts or the equity in their rental properties.)  Because petitioners'

**[*12]** aggregate liabilities for 2013-2016 were less than $200,000, the SO did not abuse her discretion in making this determination.[3]

In their cross-motion for summary judgment petitioners assert that they will suffer financial hardship if the IRS collection action is sustained, contending that their two adult daughters and grandchildren rely on them for financial help. But petitioners did not advance this argument to the SO or present facts showing that genuine hardship (or other special circumstances) existed. If petitioners' financial circumstances have changed since the notices of determinations were issued, they are free to submit to the IRS at any time, for its consideration and possible acceptance, a proposed collection alternative supported by the required financial information.

To reflect the foregoing,

<u>An order and decision will be entered for respondent</u>.

---

[3]Petitioners assert in their cross-motion for summary judgment that their residence is currently worth $835,000 and is subject to a mortgage of $668,000. Assuming this to be true, it would appear that petitioners have borrowed against the equity in their home since submitting the Form 433-A to the SO. In any event, the SO properly made her decision on the basis of the information before her at that time.