T.C. Memo. 2018-135

UNITED STATES TAX COURT

LOUIS S. SHUMAN AND SANDRA SHUMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 27857-13, 15847-14L.          Filed August 23, 2018.

Louis S. Shuman, pro se.

<u>Alex Shlivko</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  This proceeding involves two cases that have been

consolidated for trial, briefing, and opinion.  In the first, at docket No. 27857-13,

[*2] petitioners[1] seek redetermination of respondent's determination of a deficiency of $88,613 and a section 6662(a) accuracy-related penalty of $17,723 with respect to petitioners' Federal income tax for 2011.[2] In the second, at docket No. 15847-14L, petitioners seek review of a determination by the Office of Appeals (Appeals) of the Internal Revenue Service (IRS) to proceed with a levy to collect $40,277 in Federal income tax that petitioners reported as due on their joint Federal income tax return for 2011.[3] After concessions,[4] the following issues

---

[1]Petitioner Sandra Shuman failed to appear for trial, whereupon respondent moved to dismiss as to her for failure to properly prosecute. On brief, respondent treats both petitioners as having issues pending in these cases. We therefore treat respondent as having abandoned his motion.

[2]Unless otherwise noted, all section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

[3]Respondent's account transcript indicates that he assessed $40,277 in Federal income tax for petitioners' 2011 taxable year. However, petitioners reported $40,543 in tax due on the 2011 return. The parties have offered no explanation for the apparent discrepancy. We therefore treat the amount by which the higher figure exceeds the lower as respondent's concession of a reduction in the deficiency by that amount.

[4]Petitioners concede that they failed to report gross receipts of $1,349 and that they were not entitled to a claimed home mortgage interest deduction of $62,154 for 2011. Respondent concedes the sec. 6662(a) penalty with respect to the underpayments arising from the foregoing. Respondent further concedes his determination that petitioners failed to report $17,469 of wage income (and consequently the associated sec. 6662(a) penalty).

[*3] remain for decision: (1) whether respondent properly disallowed a $197,337 casualty loss deduction claimed on the 2011 return; (2) whether respondent properly disallowed a $566,889 credit, for 2011 estimated tax payments and amounts applied from the 2010 return, claimed on the 2011 return; (3) whether petitioners are liable for a section 6662(a) accuracy-related penalty with respect to the underpayment arising from the disallowance of the casualty loss deduction claimed on the 2011 return; and (4) whether the determination by Appeals to proceed with the proposed levy to collect the 2011 income tax liability as reported by petitioners was an abuse of discretion.

## FINDINGS OF FACT

Some of the facts have been stipulated and, together with the exhibits attached thereto, are incorporated herein by this reference. At the time the petitions were filed in these cases, petitioners resided in Maryland.

I.  2010 return

A.  Original 2010 return

Petitioners (who were spouses) timely filed a 2010 joint Federal income tax return (original 2010 return), reporting taxable income of $226,830 and total tax due of $69,662. The original 2010 return reported withholding tax payments of

**[*4]** $17,856 and no 2010 estimated payments or amounts applied from 2009, resulting in total tax payments of $17,856. Petitioners reported a balance due of $52,875, consisting of $51,806 in tax and an estimated tax penalty of $1,069. Petitioners did not refer to or claim a deduction for a casualty loss on the original 2010 return.

B.      Amended 2010 returns

Petitioners submitted two amended returns for the 2010 taxable year (first and second 2010 amended return, respectively).

1.      First 2010 amended return

The first 2010 amended return reported an approximately $30,000 decrease in taxable income, stating that it reflected a correction "for professional/consultant fees (2010 Schedule C adjustment: $30,000)." The return also reported reductions of $20,087 and $803 in income and employment tax, respectively, without apparent explanation. The return also reported a previously undisclosed estimated tax payment of $618,403, explaining the newly claimed payment as follows: "Correction of returns for 2005-2009, to correct payments properly applied to 2005-2009 resulted in payments reflected on this amended return. * * * These corrections arise from taxpayer(s) [sic] stock option income being taxed without deduction for stock option basis." Petitioners added their previously reported

[*5] withholding of $17,856 to the newly claimed estimated tax payments of $618,403, applied that sum ($636,259) against the reported total tax due of $48,772, and claimed the difference of $587,487 as an overpayment. The return elected that the claimed $587,487 overpayment be applied toward petitioners' 2011 estimated tax.

Petitioners attached to the first 2010 amended return a 12-page letter asserting that as a result of amended returns completed for the 2005 to 2009 taxable years, they were entitled to the amount claimed as an overpayment. In the attached letter, petitioners also asserted that they were entitled to a "business loss" deduction under section 165 for 2010 because that was the year in which the "taxpayer became aware, for the first time, of the substantial losses incurred because tax professionals, that prepared taxpayer's returns, did not reduce stock option income by stock option basis." The letter included the following, which it characterized as a calculation of the claimed loss:

1. $641,345, as set out in Atch 06, and Atch 001-2005;[5]
2. Increased overpayments of state-local taxes approximated at: $60,750;
3. Forced sale of taxpayers [sic] Potomac, Md home, with resulting closing costs approximating: $20,000; and loss of equity in home approximating: $400,000.

---

[5]Petitioners' letter states that "Atch 06" and "Atch 001-2005" are references to two amended returns petitioners filed for the 2005 taxable year, dated July 23, 2010, and April 16, 2012, respectively.

**[*6]**    4.  Subsequent purchase of home, with closing costs approximating: $20,000.
5.  Purchase of home, approximately 1/2 the value of the Potomac MD home, with no equity, and increased mortgage; difference in cost of Potomac mortgage payments and Chevy Chase payments (2006-2010), approximating: $225,000.
6.  Total loss: $967,095.

The attached letter stated the following with respect to the claimed loss:

> Taxpayer has no coverage for this loss, by compensation, or otherwise.  If taxpayer were to make a claim, it would be in the nature of professional malpractice, and/or negligence.  Taxpayer has abandoned any such claims, because, in addition to the time and expense of suing, taxpayer would be required to sue several attorney, and accountant, firms including persons with very close relationships to immediate family members.  The destructive effect of such actions would only further damage, if not irreparably damage, already damaged family relationships.

The sale of the Potomac, Maryland, residence, for which petitioners claimed

a loss for 2010, occurred in 2005.

### 2.    Second 2010 amended return

The second 2010 amended return reported a decrease in taxable income from

$226,830 to –$202,461, with the following explanation:

> 2.  Line 1 adjustments:  (a) professional consult fees/employment: $30,000;
>                          (b) IRC 165 business casualty loss arising from prior returns not deducting cost basis of stock options from income derived from stock options.  Loss amount:  $399,873 ([$]344,215.41 lost equity from sale of Potomac, MD home; $40,073 apportioned closing costs from sale of Potomac, MD home; [$]15,585 apportioned closing costs-purchase-Chevy Chase, MD home).

**[*7]** The return reported that the $69,662 of tax reported as due on the original 2010 return was reduced by $63,555. But instead of reporting the remaining difference of $6,107 as the correct amount of total tax due, petitioners reported −$197,337 as the correct amount.

The return also reported a new and previously undisclosed estimated tax payment of $549,033, without explanation, and added it to the $17,856 of withholding reported on the original 2010 return, for a total of $566,889, which was claimed as an overpayment. The return elected that the claimed $566,889 overpayment be applied to petitioners' 2011 estimated tax.

### 3. Denial of refund

The parties have stipulated that to the extent petitioners submitted claims for refunds or overpayments for 2010, respondent denied them. As of September 15, 2014, petitioners' Federal income tax account transcript for 2010 showed a balance due, including accrued interest and penalties, of $72,220.

## II. 2011 return

Petitioners prepared and filed the 2011 Form 1040, U.S. Individual Income Tax Return, reporting total tax due of $40,543. On line 63 ("2011 estimated tax payments and amount applied from 2010 return") petitioners reported tax payments of $566,889, that is, the amount of the overpayment claimed on the

**[*8]** second 2010 amended return. Petitioners claimed the difference between these two figures, $526,346, as a refund.

For 2011 petitioner Louis S. Shuman (Dr. Shuman), a dentist, had no Federal income tax withheld from his wages,[6] and petitioners made no Federal income tax payments of any kind. Petitioners' Federal income tax transcript for 2011 reflects no credits from prior years.

Petitioners filed a Schedule C with the 2011 return covering Dr. Shuman's business, identified on the Schedule C as "Orthodontist/Lecturer/Researcher". Petitioners reported gross income on the Schedule C of $386,200. Under "Other Expenses", petitioners claimed a $197,337 deduction for "IRC 165-business casualty loss carryover from: 2010". Petitioners filed a Schedule A, Itemized Deductions, with the 2011 return but did not report a casualty loss on line 20 ("Casualty or theft loss(es)") or attach Form 4684, Casualties and Thefts, as Schedule A instructs. Aside from the aforementioned deduction claimed on Schedule C, the 2011 return provided no information concerning the purported casualty loss.

---

[6]During 2011 Dr. Shuman was an employee, earning wages of $167,470. As discussed above, Dr. Shuman also filed a Schedule C, Profit or Loss From Business, with the 2011 return, reporting $386,200 in gross income from a Schedule C business. Petitioner Sandra Shuman did not report any wages but did file a Schedule C with the 2011 return, reporting a $1,313 net profit from a business identified on the Schedule C as "Design".

**[*9]** III.   Notice of deficiency

On August 27, 2013, respondent issued a notice of deficiency, determining a deficiency of $88,613 and a section 6662(a) accuracy-related penalty of $17,723 with respect to petitioners' 2011 Federal income tax.  The notice disallowed the $197,337 casualty loss deduction claimed on the 2011 return.  The notice also stated that "based on the exam there is no evidence to support the prior year over-assessment in the amount of $566,889.00.  As a result there are no payments applied to the total tax owed for tax year 2011."  Petitioners timely petitioned for a redetermination of the deficiency.

IV.   Collection of self-reported tax for 2011

On October 1, 2013, after issuing to petitioners a notice and demand for payment of the tax reported as due on the 2011 return, respondent issued a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing.  In response, petitioners filed Form 12153, Request for a Collection Due Process or Equivalent Hearing.  Petitioners' case was assigned to a settlement officer to conduct the collection due process (CDP) hearing.

The settlement officer held a conference with petitioners' representative. During the conference petitioners' representative raised no collection alternatives or arguments premised on procedural irregularities.  Petitioners' representative

**[*10]** raised only the following arguments: (1) petitioners had overpayments of tax for the taxable years 2003 through 2010, (2) the IRS improperly denied petitioners' overpayment claims, (3) the settlement officer should redetermine the substance and merits of the overpayment claims, (4) the determination should be favorable to petitioners, and (5) the determination should result in the allowance of the overpayments and the issuance of a refund to petitioners to be used to pay the 2011 tax liability (with the balance refunded to petitioners). Thus, the sole issue raised during the conference was that petitioners' 2011 tax liability had been satisfied and petitioners were due a refund.

After reviewing petitioners' transcripts, the settlement officer explained to petitioners' representative that petitioners' refund claims for the prior years, including 2010, had been disallowed and that there were no overpayment credits available to offset the 2011 tax liability. The settlement officer verified that all applicable laws and administrative procedures had been followed with respect to the unpaid tax and the proposed levy. He also verified that petitioners had no available credits from prior taxable years and that they did not otherwise make any payments toward their tax liability for 2011.

[*11] V.     Notice of determination

On June 6, 2014, Appeals issued a notice of determination sustaining the proposed levy action to collect the self-assessed 2011 tax liability. The notice stated that petitioners had offered no collection alternatives and that the refunds petitioners claimed in amended returns for prior years--which petitioners had argued satisfied the 2011 tax liability--had been denied. Finally, the notice stated that because petitioners had not offered an acceptable alternative to satisfy the 2011 tax liability, the proposed collection action was no more intrusive than necessary and therefore balanced petitioners' concerns with the IRS' interest in the efficient collection of taxes. Petitioners timely petitioned for review of the determination.

## OPINION

I.     Deficiency determination

Petitioners have petitioned for a redetermination of the deficiency and section 6662(a) accuracy-related penalty respondent determined for 2011. After concessions, the deficiency remaining at issue arises in part from respondent's disallowance of a $197,337 casualty loss deduction. The notice of deficiency also noted that there was no evidence to support petitioners' claim on the 2011 return of

**[\*12]** a "credit elect overpayment"--i.e., an overpayment of tax from 2010 that petitioners elected to apply towards their 2011 Federal income tax--of $566,889.[7]

### A.    Casualty loss

In general, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[8]  Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they have met all requirements necessary to be entitled to the claimed deductions.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Moreover, deductions are to be narrowly construed, and taxpayers bear the burden of proving that the claimed deduction falls within the ambit of the cited statutory provision.  Deputy v.

---

[7]A taxpayer may elect to apply all or part of the overpayment shown on his return to his estimated income tax for the succeeding taxable year.  See sec. 6402(b); Weber v. Commissioner, 138 T.C. 348, 356-357 (2012); sec. 301.6402-3(a)(5), Proced. & Admin. Regs.  "The subject of such an election is known as a 'credit elect overpayment' or simply a 'credit elect.'"  FleetBoston Fin. Corp. v. United States, 483 F.3d 1345, 1347 (Fed. Cir. 2007).  The taxpayer's election, however, is not binding on the IRS.  See Weber v. Commissioner, 138 T.C. at 356-357; sec. 301.6402-3(a)(6), Proced. & Admin. Regs.

[8]Petitioners contend for the first time in a posttrial submission that they are entitled to a shift in the burden of proof to respondent under sec. 7491(a).  However, a taxpayer's entitlement to such a shift requires that he have substantiated all items.  Sec. 7491(a)(2)(A).  Petitioners have not done so.

**[*13]** <u>du Pont</u>, 308 U.S. 488, 493 (1940); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).

Section 165(a) generally allows a deduction for any loss sustained during the taxable year if it is not compensated for by insurance or otherwise. In the case of an individual, however, the general rule is restricted to: (1) losses incurred in a trade or business; (2) losses incurred in a transaction entered into for profit, though not connected to a trade or business; and (3) losses of property not connected with a trade or business or a transaction entered into for profit, where the losses "arise from fire, storm, shipwreck, or other casualty, or from theft." Sec. 165(c).

On Schedule C of the 2011 return, in connection with Dr. Shuman's dental practice, petitioners claimed a $197,337 deduction for "IRC 165-business casualty loss carryover from: 2010". Petitioners filed a Schedule A with the 2011 return but did not report a casualty loss thereon or attach Form 4684 as directed by Schedule A. In fact, the 2011 return did not provide any information concerning the purported casualty loss beyond the skeletal description on Dr. Shuman's Schedule C, which characterized it as a "casualty loss carryover from: 2010". The 2010 return did not claim a casualty loss deduction, or even reference a casualty loss, for that matter.

[*14] As noted supra pp. 4-7, petitioners submitted two amended returns for 2010.[9] The inception of the claim that later manifested itself as a casualty loss deduction on the 2011 return appears to have been on the first 2010 amended return, where petitioners claimed a "business loss" deduction under section 165 for "substantial losses incurred because tax professionals, that prepared taxpayer's returns, did not reduce stock option income by stock option basis." The first 2010 amended return set forth a calculation of the "business loss" consisting of approximations of various costs associated with the 2005 sale of petitioners' personal residence.

The second 2010 amended return provided a similar explanation for the purported loss:

> IRC 165 business casualty loss arising from prior returns not deducting cost basis of stock options from income derived from stock options. Loss amount: $399,873 ([$]344.215.41 lost equity from sale of Potomac, MD home; $40,073 apportioned closing costs from sale of Potomac, MD home; [$]15,585 apportioned closing costs-purchase-Chevy Chase, MD home).

Respondent argues that petitioners have not established legitimate grounds for claiming a deduction for the purported casualty loss or supported it with adequate substantiation. Petitioners now concede on brief that the casualty loss is not related to Dr. Shuman's business but contend that it is nevertheless deductible

---

[9]Respondent, acting within his discretion, see Badaracco v. Commissioner, 464 U.S. 386, 393 (1984), did not accept either of the two amended returns for 2010 or grant the refunds claimed therein.

**[\*15]** on three different grounds, alternatively arguing that it represents: (1) the loss in equity from the sale of petitioners' residence to pay taxes that were not legitimately owed; (2) the abandonment of a negligence claim against return preparers who inaccurately reported the value of stock options granted to Dr. Shuman, resulting in overpayments of taxes; or (3) a form of compensation for refund claims for those overpayments barred by the statute of limitations.[10]

As noted above, petitioners have now conceded that the claimed loss was not incurred in a trade or business, and the factual grounds they have cited for the loss lack the requisite connection to a transaction entered into for profit. Consequently, if petitioners' claim is to be sustained, it must be as a loss of property "aris[ing] from fire, storm, shipwreck, or other casualty, or from theft."

The term "other casualty" in section 165(c)(3) is not expressly defined in either the statute or the regulations. This Court construes the term by applying the rule of ejusdem generis. Maher v. Commissioner, 76 T.C. 593, 596 (1981), aff'd, 680 F.2d 91 (11th Cir. 1982); Dodge v. Commissioner, 25 T.C. 1022, 1024 (1956). Under this rule, general words that follow the enumeration of specific classes are construed as applying to things of the same general class as those enumerated. Thus, in order for the loss to be deductible, the taxpayer must prove that the

---

[10]We note that the amount claimed as a casualty loss, i.e., $197,337, matches the amount reported as an overpayment on the second 2010 amended return.

**[*16]** destructive event or happening was similar to a fire, storm, or shipwreck.
Accordingly, "other casualty" denotes "an undesigned, sudden and unexpected
event", Durden v. Commissioner, 3 T.C. 1, 3 (1944) (quoting Webster's New
International Dictionary), or a "sudden, cataclysmic, and devastating loss", Popa v.
Commissioner, 73 T.C. 130, 132 (1979). Conversely, the term "excludes the
progressive deterioration of property through a steadily operating cause." Fay v.
Helvering, 120 F.2d 253 (2d Cir. 1941), aff'g 42 B.T.A. 206 (1940).

Petitioners' first argument--that the claimed casualty loss deduction arises
from the equity petitioners lost on the sale of their personal residence--has no
merit. The law is well established that a deduction is not allowable under section
165(a) for a loss suffered on the sale of a personal residence. See Austin v.
Commissioner, 35 T.C. 221 (1960), aff'd, 298 F.2d 583 (2d Cir. 1962); Meyer v.
Commissioner, 34 T.C. 528 (1960); Wilkes v. Commissioner, 17 T.C. 865 (1951);
Koehn v. Commissioner, 16 T.C. 1378 (1951); sec. 1.165-9(a), Income Tax Regs.[11]

Petitioners' second and third arguments--that the casualty loss deduction
arises from the abandonment of a negligence claim against their former return

---

[11]We note in addition that the evidence in the record establishes that the
residence that purportedly gave rise to the casualty loss deduction petitioners
claimed was sold in 2005, yet petitioners did not actually claim the deduction until
2010. A deduction for a casualty loss must be claimed for the taxable year in
which the loss is sustained. See secs. 1.165-1(d)(1), 1.165-7(a)(1), Income Tax
Regs.; see also Hunter v. Commissioner, 46 T.C. 477, 492 (1966).

**[\*17]** preparers or is compensation for refunds barred by the statute of limitations-- are also without merit. Courts have repeatedly ruled that "physical damage or destruction of property is an inherent prerequisite in showing a casualty loss." Citizens Bank of Weston v. Commissioner, 28 T.C. 717, 720 (1957), aff'd, 252 F.2d 425 (4th Cir. 1958); see also Kamanski v. Commissioner, 477 F.2d 452 (9th Cir. 1973), aff'g T.C. Memo. 1970-352; Pulvers v. Commissioner, 48 T.C. 245 (1967), aff'd, 407 F.2d 838 (9th Cir. 1969); Torre v. Commissioner, T.C. Memo. 2001-218, aff'd, 52 F. App'x 965 (9th Cir. 2002); Chamales v. Commissioner, T.C. Memo. 2000-33. Neither petitioners' second argument nor their third involves a loss of property arising from the physical damage or destruction thereof. Moreover, to the extent petitioners' claim arises from speculative economic losses, such a claim is beyond the scope of section 165(c)(3). "The term 'losses of property' in section 165(c)(3) does not include a taxpayer's monetary payment to a third party or a decrease in the taxpayer's net worth." Pang v. Commissioner, T.C. Memo. 2011-55, slip op. at 8; see also Furer v. Commissioner, 33 F.3d 58 (9th Cir. 1994) (holding that the taxpayers' losses "were the result of fluctuation in the market and not the result of any physical injury to the \* \* \* [taxpayers'] property" and were therefore not casualty losses), aff'g T.C. Memo. 1993-165; Dosher v. United States, 730 F.2d 375, 377 (5th Cir. 1984) (holding that "'property' as used

[*18] in § 165(c)(3) includes money only if the actual currency or coinage is physically damaged or destroyed by the enumerated or implied casualties"). We therefore sustain respondent's disallowance of the casualty loss deduction petitioners claimed on the 2011 return.

B.    Credit elect overpayments

On line 63 ("2011 estimated tax payments and amount applied from 2010 return") of the 2011 return, petitioners reported a credit elect overpayment of $566,889, that is, the amount claimed as an overpayment on the second 2010 amended return. Petitioners claim that this represents the amount by which they overpaid their Federal income tax for the taxable years 2003 through 2010. In the notice of deficiency, respondent noted that there was no evidence to support petitioners' claimed credit elect overpayment.

Petitioners--citing sections 6214(b) and 6512(b)--argue that we have deficiency jurisdiction to determine the alleged prior-year overpayments and apply them for 2011. Respondent argues that petitioners incorrectly describe and apply the relevant law. We agree with respondent.

The Tax Court is a court of limited jurisdiction, and we may exercise jurisdiction only to the extent expressly authorized by Congress. Sec. 7442; see also GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000); Henry

[*19] <u>Randolph Consulting v. Commissioner</u>, 112 T.C. 1, 4 (1999); <u>Naftel v. Commissioner</u>, 85 T.C. 527, 529 (1985).  Our jurisdiction to redetermine the amount of a deficiency is premised on the issuance of a valid notice of deficiency followed by a timely filing of a petition.  Secs. 6212(a), 6213(a), and 6214(a); <u>see also</u> <u>GAF Corp. & Subs. v. Commissioner</u>, 114 T.C. at 521.  Once validly exercised, our "jurisdiction extends to the entire subject matter of the correct tax for the taxable year", <u>Naftel v. Commissioner</u>, 85 T.C. at 533, including the taxpayer's claim of an overpayment of tax, <u>see</u> sec. 6512(b)(1).

In determining the correct tax for the taxable year, section 6214(b) allows us to "consider such facts with relation to the taxes for other years * * * as may be necessary" but expressly deprives us of "jurisdiction to determine whether or not the tax for any other year * * * has been overpaid or underpaid."

We have previously construed section 6214(b) as granting us the authority for "computing, as distinguished from 'determining,' the correct tax liability for a year not in issue when such a computation is necessary to a determination of the correct tax liability for a year that has been placed in issue." <u>Lone Manor Farms, Inc. v. Commissioner</u>, 61 T.C. 436, 440 (1974), <u>aff'd</u>, 510 F.2d 970 (3d Cir. 1975).

The relief petitioners request would require us to determine whether their Federal income tax was overpaid or underpaid for eight years that are not at issue

**[\*20]** in this proceeding (that is, respondent has not determined any deficiency for any of those years such that this Court would have had jurisdiction if petitioners had timely petitioned for a redetermination with respect to those years).  This we cannot do.  It is well settled that our jurisdiction to determine an overpayment in a deficiency case extends only to the year before the Court.  See secs. 6214(b), 6512(b)(1); Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 420-421 (1943); Patronik-Holder v. Commissioner, 100 T.C. 374, 377 (1993); Kaplan v. Commissioner, T.C. Memo. 2016-149; Kupersmit v. Commissioner, T.C. Memo. 2014-129; Solberg v. Commissioner, T.C. Memo. 2011-221; Porter v. Commissioner, T.C. Memo. 2010-154; Stewart v. Commissioner, T.C. Memo. 1998-319.  The only year covered by the notice of deficiency is 2011.  We therefore lack deficiency jurisdiction to determine whether petitioners overpaid their tax for 2010 or any other prior year.

C.    Accuracy-related penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty of 20% on the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations, or a substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the internal revenue laws or to exercise reasonable care in the preparation of a tax

**[*21]** return.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  "Disregard"

includes any careless, reckless, or intentional disregard of the Code, regulations, or

certain IRS administrative guidance.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income

Tax Regs.  A substantial understatement of income tax is defined as an

understatement of tax that exceeds the greater of 10% of the tax required to be

shown on the return or $5,000.[12]  Sec. 6662(d)(1)(A).  In the notice of deficiency,

respondent determined that petitioners are liable for a section 6662(b)(1)

negligence penalty and a section 6662(b)(2) substantial understatement penalty

with respect to the underpayment arising from the disallowance of the casualty loss

deduction claimed on the 2011 return.[13]

---

[12]The understatement is reduced to the extent that the taxpayer (1) has substantial authority for the tax treatment of the item or (2) has adequately disclosed his position and has reasonable basis for such position.  Sec. 6662(d)(2)(B).

[13]The notice of deficiency also determined that petitioners are liable for a sec. 6662(a) accuracy-related penalty attributable to a "[s]ubstantial valuation misstatement (overstatement)", see sec. 6662(b)(3), and a "[t]ransaction lacking economic substance", see sec. 6662(b)(6).  Respondent did not argue for these grounds on brief, and he has therefore abandoned them.  See Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003).

[*22] We initially must determine whether respondent has satisfied the written supervisory approval requirement of section 6751(b)(1).[14] These cases were tried, and the record was closed, before the issuance of our Opinion in Graev v. Commissioner (Graev III), 149 T.C. __ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). Graev III sets forth the history of our interpretation of section 6751(b). Suffice it to say that, after having earlier taken a contrary position, in Graev III we held that the Commissioner's burden of production under section 7491(c)[15] includes establishing compliance with the written supervisory approval requirement of section 6751(b).

In view of the Court's Opinion in Graev III, we ordered respondent to file a response addressing the effect of section 6751(b) on these cases and directing the Court to any evidence of section 6751(b) supervisory approval in the record. Respondent was unable to point to any evidence in the record that satisfies his

_____

[14]Sec. 6751(b)(1) provides:

No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

[15]Under sec. 7491(c), the Commissioner bears the burden of production with respect to accuracy-related penalties and must come forward with sufficient evidence indicating that it is appropriate to impose them. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

[*23] burden of production to establish compliance with section 6751(b) for either the section 6662(b)(1) negligence penalty or the section 6662(b)(2) substantial understatement penalty. Respondent now concedes the negligence penalty, but seeks to reopen the record for the purpose of allowing him to submit evidence to establish that he satisfied the requirements of section 6751(b) with respect to the substantial understatement penalty.

Whether to reopen the record for the submission of additional evidence is a matter addressed to the sound discretion of the Court. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331-332 (1971); Deininger v. Commissioner, 313 F.2d 221, 224 (4th Cir. 1963), aff'g in part, modifying in part, and remanding T.C. Memo. 1961-212; Dynamo Holdings Ltd. P'ship v. Commissioner, 150 T.C. __, __ (slip op. at 10) (May 7, 2018); Butler v. Commissioner, 114 T.C. 276, 286-287 (2000). We may grant a motion to reopen the record only if the evidence relied on is (1) not merely cumulative or impeaching, (2) material to the issues involved, and (3) likely to change some aspect of the outcome of the case. See Butler v. Commissioner, 114 T.C. at 287; Fiedziuszko v. Commissioner, T.C. Memo. 2018-75, at *25; Azam v. Commissioner, T.C. Memo. 2018-72, at *25-*26; Sarvak v. Commissioner, T.C. Memo. 2018-68, at *20. In the event these threshold conditions are satisfied, we

**[\*24]** examine (1) the diligence (or lack thereof) of the moving party in submitting the evidence, (2) the possibility of prejudice to the nonmoving party if the record were reopened, and (3) where the interests of justice lie. See Levy v. Lexington Cty., 589 F.3d 708, 714-715 (4th Cir. 2009).

The evidence respondent proffers consists of the declaration of Revenue Agent (RA) Susan E. Michel (declaration) and a Civil Penalty Approval Form (penalty approval form). Respondent argues that the proffered evidence establishes that RA Michel initially determined the applicability of the substantial understatement penalty and prepared the penalty approval form and that her immediate supervisor, Group Manager (GM) Alice Polser, thereafter approved (in writing) the assertion of the penalty by executing the form. Respondent argues that the proffered evidence is admissible pursuant to rules 803(6) and 902(11) of the Federal Rules of Evidence, which together provide for the self-authentication of records kept in the course of a regularly conducted activity of an organization.[16]

---

[16]The declaration states that in the normal course of her duties, RA Michel: (1) initially determined that petitioners underreported and underpaid their tax liability for 2011 and that the assertion of the sec. 6662 penalty for a substantial understatement of income tax was therefore appropriate; and (2) prepared, in accordance with sec. 6751(b) and consistent with her regular practice, the penalty approval form and requested the approval of her immediate supervisor, GM Polser, which GM Polser subsequently granted by executing the penalty approval form. RA Michel declares that the penalty approval form was prepared at the time of the occurrence of the matters set forth therein. She declares that she has personal

(continued...)

**[\*25]** Petitioners object to the admission of the proffered evidence, arguing that the penalty approval form is facially defective. The penalty approval form provides a line labeled "Group Manager Signature", and directly adjacent thereto, a line labeled "Date". The penalty approval form includes the apparent signature of GM Polser on the line provided, but the line provided for the date is blank. Petitioners argue that "[t]his missing date, which should properly have accompanied * * * [GM] Polser's signature, thereby attesting to the actual date of her signature, is a material omission, rendering the form defective on its face."

As to the threshold issue of admissibility, we agree with respondent: The penalty approval form is a record kept in the ordinary course of a business activity, and the declaration lays an adequate foundation for its admission.[17] See Fed. R.

---

[16](...continued)
knowledge of the IRS recordkeeping system and that the penalty approval form was taken from the IRS administrative file for petitioners. She further declares that the penalty approval form was kept in the course of regularly conducted IRS activity, and that it is regular IRS practice to keep such records.

[17]As discussed infra pp. 26-28, we agree with petitioners' arguments as to the merits of the proffered evidence; however, those arguments go to the evidence's weight, not its admissibility. See United States v. Panza, 750 F.2d 1141, 1150-1151 (2d Cir. 1984) (finding no error where incomplete insurance company files were admitted as business records because the "incompleteness of the files went to the weight rather than to the admissibility of the evidence"); Crompton-Richmond Co., Factors v. Briggs, 560 F.2d 1195, 1202 n.12 (5th Cir. 1977) (explaining that questions concerning the "inaccuracy and incompleteness" of evidence admitted under the business records exception were "an assault on its

(continued...)

**[\*26]** Evid. 803(6), 902(11); <u>Fiedziuszko v. Commissioner</u>, at \*26-\*27; <u>Sarvak v. Commissioner</u>, at \*20-\*22; <u>see also</u> <u>United States v. Komasa</u>, 767 F.3d 151, 154-157 (2d Cir. 2014); <u>United States v. Daniels</u>, 723 F.3d 562, 579-581 (5th Cir. 2013); <u>Clough v. Commissioner</u>, 119 T.C. 183, 186-191 (2002).  Moreover, the evidence respondent proffers is neither cumulative nor impeaching.  The record is currently devoid of evidence as to whether respondent obtained the requisite supervisory approval of the initial penalty determination.  In the absence of such evidence, respondent cannot meet his burden of production concerning the accuracy-related penalty.  Thus, the evidence is also material.

However, we cannot conclude that the proffered evidence, if admitted, would change the outcome of these cases.  Written supervisory approval of the initial penalty determination must be obtained no later than the date the Commissioner issues the notice of deficiency (or files an answer or amended answer) asserting such a penalty.  <u>See</u> <u>Graev III</u>, 149 T.C. __ (Dec. 20, 2017); <u>see also</u> <u>Chai v. Commissioner</u>, 851 F.3d 190, 221 (2d Cir. 2017), <u>aff'g in part, rev'g in part</u> T.C. Memo. 2015-42; <u>Endeavor Partners Fund, LLC v. Commissioner</u>, T.C. Memo. 2018-96, at \*63 ("When a penalty is asserted in a notice of deficiency \* \* \* the Commissioner must secure supervisory approval for the penalty before issuing

[17](...continued)
weight, not on its admissibility").

[*27] that notice to the taxpayer."). While the penalty approval form bears GM Polser's apparent signature, the line provided for the date is blank. Thus, we cannot reliably conclude on the basis of the penalty approval form that respondent satisfied the requirements of section 6751(b) before issuing the notice of deficiency determining the penalty at issue.[18]

In her declaration, RA Michel asserts that GM Polser executed the penalty approval form "[o]n or about" the date that she requested the signature. However, the declaration is hearsay that is admissible only for the purpose of authenticating the penalty approval form as a business record. See Fed. R. Evid. 801(c), 802, 803(6), 902(11); Azam v. Commissioner, at *28; First Hawaiian Bank v. Bartel, CV. No. 08-00177 DAE-LEK, 2009 WL 10676756, at *11-*14 (D. Haw. May 22, 2009) (holding that a declaration under rule 902(11) of the Federal Rules of Evidence is not itself a business record and, if offered for the truth of matter asserted therein, is inadmissible hearsay); United States v. Bryant, No. 3:04-CR-00047-01, 2006 WL 1700107, at *4 (W.D. Va. June 15, 2006) (holding

---

[18]The penalty approval form includes a header displaying RA Michel's name and, directly below that, what appears to be a computer-generated date. The displayed date is the same date that RA Michel claims to have initially determined the penalty at issue. We agree with petitioners that the displayed date provides (at best) evidence of when RA Michel made the initial determination and prepared the penalty approval form for GM Polser's signature, not the date GM Polser actually approved that determination.

[*28] that a "business record certification * * * does not serve independently as relevant evidence * * * ; rather, it serves merely to lay a foundation for the admission of business records"); see also 8 Michael H. Graham, Handbook of Fed. Evid. sec. 902:0 (8th ed. 2016) ("Rule 902 * * * operates as a hearsay exception on the limited question of authenticity."). Respondent has not identified an exception to the hearsay rule that would permit us to admit the declaration for the purpose of establishing the date that written supervisory approval was obtained in these cases. Moreover, despite petitioners' having raised the issue of the missing date some months ago, respondent has not requested further trial proceedings or proposed any other means of bolstering the penalty approval form, which is defective on its face. Under these circumstances, we decline to exercise our discretion by ordering, sua sponte, further trial proceedings. See Azam v. Commissioner, at *28.

Even if we were to admit the proffered evidence, respondent would not meet his burden of production with respect to the penalty at issue. Because the proffered evidence would have no impact on the outcome, we will deny respondent's motion to reopen the record. See Dynamo Holdings Ltd. P'ship v. Commissioner, 150 T.C. at __ (slip op. at 11) ("Granting such a motion would be a meaningless gesture if it would not affect the outcome, and it would be a waste of judicial resources."); Butler v. Commissioner, 114 T.C. at 287; Azam v. Commissioner, at

**[\*29]** \*28-\*29.  We therefore hold that petitioners are not liable for an accuracy-related penalty for an underpayment due to a substantial understatement of income tax for 2011.

## II.    Proposed collection action

Petitioners have also petitioned for review of the determination by Appeals to proceed with a levy to collect the $40,277 in Federal income tax that petitioners reported as due on their 2011 return.[19]

Section 6330 provides that no levy may be made on any property or right to property of a taxpayer unless the Commissioner first notifies the taxpayer of the right to a hearing before Appeals.  Sec. 6330(a) and (b).  At the hearing, the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of

_____

[19]The Commissioner is authorized to summarily assess all taxes reported by a taxpayer on a filed return.  See sec. 6201(a)(1); sec. 301.6201-1(a)(1), Proced. & Admin. Regs.; see also Meyer v. Commissioner, 97 T.C. 555, 559 (1991).  Courts have held that the Commissioner may--as he does here--attempt to collect taxes for a taxable year in increments, consisting of:  (1) the increment that the taxpayer has reported on a return but not paid and (2) the additional increment that the Commissioner believes the taxpayer owes but did not report, i.e., the deficiency.  See Fayeghi v. Commissioner, 211 F.3d 504 (9th Cir. 2000), aff'g T.C. Memo. 1998-297.  Consequently, the bar on assessment (and collection) of a deficiency that applies to pending Tax Court proceedings relates only to the deficiency; assessment (and collection) of the amount of tax that the taxpayer reported on the return may proceed notwithstanding the Commissioner's determination of a deficiency for the taxpayer's same taxable year.  See id.

**[\*30]** collection actions, and offers of collection alternatives. Sec. 6330(c)(2)(A); Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). A taxpayer may contest the existence or amount of the underlying tax liability if the taxpayer did not receive a statutory notice of deficiency for the liability or otherwise have an earlier opportunity to dispute it. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. at 609. Following the hearing, Appeals must determine whether the Commissioner may proceed with the proposed collection action, taking into consideration, inter alia, the issues raised by the taxpayer. Sec. 6330(c)(3). We have jurisdiction to review Appeals' determination. Sec. 6330(d)(1).

Where the underlying tax liability is properly at issue, we review Appeals' determination de novo. Goza v. Commissioner, 114 T.C. at 181-182. Where the underlying tax liability is not at issue, we review the determination for abuse of discretion. Id. at 182. This Court will find an abuse of discretion has occurred in CDP cases where the determination by Appeals is arbitrary, capricious, or without sound basis in fact or law. See Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

Petitioners argue that the settlement officer erred in failing to apply against their 2011 Federal income tax liability a $566,889 credit elect overpayment they

**[*31]** claimed on the 2011 return.[20] In CDP cases, we review Appeals'

determination concerning a taxpayer's claim of a credit elect overpayment for

abuse of discretion. See Weber v. Commissioner, 138 T.C. 348 (2012); Del-Co W.

v. Commissioner, T.C. Memo. 2015-142; Precision Prosthetic v. Commissioner,

T.C. Memo. 2013-110. We must therefore decide whether the settlement officer's

determination that petitioners were not entitled to a credit elect overpayment of

$566,889 constitutes an abuse of discretion.

In appropriate circumstances, we may determine in a CDP case whether a

credit available from another taxable year should be applied to the taxpayer's

liability for the year before the Court. Del-Co W. v. Commissioner, at *6. But we

can do this only when a credit from another taxable year indisputably exists; we do

not have jurisdiction under section 6330 to "determine an overpayment of an

unrelated liability." Weber v. Commissioner, 138 T.C. at 366; see also Del-Co W.

---

[20]The sole issue raised by petitioners' representative during the CDP hearing was that petitioners' 2011 tax liability had been satisfied and petitioners were due a refund. See sec. 6330(c)(2)(B). The parties have stipulated that the settlement officer verified that all requirements of applicable law and procedure had been met. See sec. 6330(c)(1). In the notice of determination, the settlement officer, noting that petitioners did not present any acceptable collection alternatives, concluded that sustaining the proposed levy appropriately balanced the need for efficient collection of taxes with petitioners' concerns regarding the intrusiveness of the levy action. See sec. 6330(c)(3)(C).

[*32] v. Commissioner, at *6-*7; Burt v. Commissioner, T.C. Memo. 2013-140, at

*16. As we explained in Weber v. Commissioner, 138 T.C. at 371-372:

> An overpayment of a * * * [tax liability] that has been
> determined by the IRS or a court but has not been either refunded or
> applied to another liability may be an "available credit" that * * *
> could be taken into account in a CDP hearing to determine whether
> the tax at issue remains "unpaid" and whether the IRS can proceed
> with collection. But a mere claim of an overpayment is not an
> "available credit" but is instead a claim for a credit; and such a claim
> need not be resolved before the IRS can proceed with collection of the
> liability at issue. * * *

Neither the IRS nor any court has determined that petitioners have an

"available credit" to claim against their 2011 Federal income tax liability. In fact,

rather than an overpayment claim, petitioners' original 2010 return reported a

balance due of $52,875, and as of September 15, 2014, petitioners' Federal income

tax account transcript for 2010 showed a balance due, including accrued interest

and penalties, of $72,220. Thus, the original 2010 return provides no support for

petitioners' credit elect overpayment claim.

Petitioners did make credit elect overpayment claims on the two 2010

amended returns. The first 2010 amended return claimed an overpayment of

$587,487, which petitioners elected to have applied against their 2011 tax liability.

The second 2010 amended return claimed an overpayment of $566,889, which

petitioners again elected to have applied against their 2011 tax liability. However,

**[\*33]** the settlement officer, having reviewed petitioners' account transcripts, found that the IRS had disallowed both of petitioners' 2010 refund claims. Moreover, there is no evidence in the record that petitioners filed any suit for a refund for 2010 or made the settlement officer aware that they had done so.[21]  This Court lacks jurisdiction "to make 'available' a credit that is currently not available because the IRS has disallowed it."  Weber v. Commissioner, 138 T.C. at 368; see also Robinson v. Commissioner, T.C. Memo. 2017-207, at \*16; Morris v. Commissioner, T.C. Memo. 2016-16, at \*20-\*21; Del-Co W. v. Commissioner, at \*6-\*8; Burt v. Commissioner, at \*16-\*17; Precision Prosthetic v. Commissioner, at \*9 ("[T]he Court can consider only nonrefunded or not yet applied 'available' credits arising in nondetermination years when determining whether a tax liability at issue has been reduced or eliminated."); Everett Assocs., Inc. v. Commissioner, T.C. Memo. 2012-143, slip op. at 16 ("[U]ntil the credit has fully materialized, the taxpayer merely asserts a claim for credit which is beyond the scope of our jurisdiction in a CDP case.").

In sum, petitioners have not shown that they have an "available credit" for 2010 that can be taken into account in determining the extent to which the tax liability for 2011 remains unpaid.  Rather, petitioners' contention that they are

---

[21]In fact, at trial petitioners conceded that they had not filed any suit for refund with respect to their 2010 taxable year.

**[*34]** entitled to the $566,889 credit elect overpayment claimed on the 2011 return constitutes--at most--a "<u>claim</u> for credit", and such claims "need not be resolved before the IRS can proceed with collection of the liability at issue." <u>Weber v. Commissioner</u>, 138 T.C. at 372; <u>see also</u> <u>Del-Co W. v. Commissioner</u>, at *7-*8; <u>Burt v. Commissioner</u>, at *16-*18; <u>Precision Prosthetic v. Commissioner</u>, at *8-*10; <u>Everett Assocs., Inc. v. Commissioner</u>, slip. op. at 16-17.

The only issue petitioners raised during the CDP hearing involved their claim that they had overpaid their Federal income tax for prior years. The settlement officer verified that petitioners had no available credits from prior taxable years and that they did not otherwise make any payments toward their 2011 tax liability. He explained to petitioners that the refunds claimed for prior taxable years had been disallowed and that as a result there were no amounts available to reduce their 2011 tax liability. After verifying that all applicable law and procedures were followed, he concluded that sustaining the proposed levy appropriately balanced the need for efficient collection of taxes with petitioners' concerns regarding the intrusiveness of the levy action. Thus, we hold that the settlement officer did not abuse his discretion by issuing the notice of determination sustaining the proposed levy action.

[*35]  To reflect the foregoing,

Decision will be entered under

Rule 155 in docket No. 27857-13 and for

respondent in docket No. 15847-14L.